### In re VICTOR'S LADIES SHOP, Inc.
### No. 20480.

District Court, E. D. Pennsylvania.
July 18, 1940.

Supplemental Opinion May 21, 1942.

Charles D. Fagles, of Philadelphia, Pa., for bankrupt.

Wexler & Weisman, of Philadelphia, Pa., for trustee.

John M. Hill, of Philadelphia, Pa., referee in Bankruptcy.

KALODNER, District Judge.

This case arises on petitions by both the Trustee and the president of the bankrupt corporation, Louis Epstein, for review of the findings and order of the Referee that "Louis Epstein turn over to George J. Cherry, the Trustee in Bankruptcy, dresses, suits, etc., such as those carried by the Bankrupt Company to the cost price of $4,000. or the equivalent thereof in cash, which dresses, suits, etc., belonged to the instant bankrupt estate and were in the

possession or under the control of the said Louis Epstein at the time the petition in bankruptcy was filed and fraudulently concealed or withheld by him from his Trustee". The Trustee also seeks an order on Epstein and the bankrupt corporation to turn over additional goods and merchandise of the cost value of $6,047.81. Epstein denies having concealed or withheld from the Trustee any property belonging to the estate and seeks to have the Referee's order invalidated as unsupported by the evidence.

On July 15, 1938, a petition in involuntary bankruptcy was filed against the Victor's Ladies Shop, Inc. An adjudication was decreed on August 29, 1938, and the matter referred to the Referee. On January 4, 1939, a petition was filed by the duly elected and qualified Trustee praying for an order on the bankrupt corporation and its president, Louis Epstein, to turn over to him merchandise costing $10,538.48 or the cash equivalent thereof. An amended petition was filed on March 17, 1939, wherein an additional item of merchandise to the value of $4,000 was added. Answers were filed by Epstein denying the material averments of the petitions.

The following findings of fact of the Referee are not in dispute: The opening inventory (merchandise on hand, January 1, 1938) was $5,195.50 at cost; purchases to July 15, 1938, amounted to $31,083.60 at cost, making a total of goods available at cost of $36,279.10. Total sales amounted to $21,084.75, leaving a balance of $15,194.35.

Epstein claims to have sustained a loss of $4,135. by virtue of an alleged burglary of merchandise in March, 1938, and to have turned over to the Receiver goods valued at $9,536.31, making a total of $13,-671.31. The balance of $1,523.04, according to Epstein, represents a loss resulting from sales below cost during the period of operation prior to bankruptcy.

The Trustee denies:

1. That there was a burglary and loss, as alleged;

2. That the closing inventory amounted to the sum claimed by Epstein; or

3. That the total sales of $21,084.75 represented goods costing $22,607.79.

Although no specific declaration was made by the Referee, his findings imply the fact that there were no records, or accounts of the bankrupt disclosing the cost of goods sold, and this not only is fully supported by the evidence but also is not disputed by any of the parties.

As to the alleged burglary loss, the Referee viewed the evidence as insufficient to establish this fact. Accordingly, he found that merchandise to the cost price of $4,000 belonging to the bankrupt estate was fraudulently concealed or withheld by Epstein from the Trustee.

However, the Referee found that the Trustee had not met his burden of establishing the cost of sales and, therefore, refused to find any further concealment.

No findings were made by the Referee with regard to the closing inventory.

In the Bankrupt's petition for review and brief the turn-over order of $4,000 is challenged:

a. On the ground that the testimony established the fact of loss by burglary, as alleged; and

b. Because there was no affirmative evidence to show that he or the bankrupt corporation possessed or controlled, at the time of the petition or thereafter, $4,000. in merchandise or its cash equivalent.

In the Trustee's petition for review and brief he contends that the Referee erred in failing to apply Section 21, sub. *l*, of the Bankruptcy Act of 1938, 11 U.S.C.A. § 44, sub. *l*, which reads: "In any proceeding under this title against a bankrupt for an accounting by him for his property or the disposition thereof, or to compel a turn-over of property by him, if his books, records, and accounts shall fail to disclose the cost to him of such property sold by him during any period under consideration, it shall be presumed, until the contrary shall appear, that such property was sold at a price not less than the cost thereof to him."

Respecting the alleged burglary loss, it is the opinion of this court that the Referee's findings in this regard ought not to be disturbed. Not only were Epstein and his witnesses unable to testify as to the exact date of the supposed burglary loss or to state whether it occurred early or late in March but, generally, their descriptions of the details of the event were entirely unconvincing and recked with suspicion. The Referee properly questioned their credibility and an examination of the record of the testimony indicates that his doubts were well-founded. One instance, in particular, will suffice. Ep-

stein testified not only that he, himself, never reported the alleged burglary loss to the police, but also that he dissuaded a private night watchman from so doing. His son, Harold, offered the improbable explanation that sometimes it is easier to recover stolen property by means of "stool-pigeons" and that they preferred to chance a recovery by that method. Similar glaring improbabilities are contained in the record, but discussion thereof needlessly would prolong this opinion.

With regard to the Trustee's contention as to the costs of sales, it would appear that the Referee erred in failing to apply the presumption raised by Section 21, sub. *l*, of the Chandler Act, supra. The lack of books, records or accounts showing the cost of sales is not in dispute. However, since the petition in bankruptcy was filed on July 15, 1938, over two months prior to the effective date of the Act, September 22, 1938, the Referee was of the opinion that this portion of the new Act had no application to the turn-over proceedings instituted on January 4, 1939. He predicated his ruling on the ground that to apply the new Act would be to disturb a "fixed right" of the bankrupt. With this conclusion I am unable to agree. Section 6, sub. b, of the amendatory Act, 11 U.S. C.A. § 1 note, provides: "Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; * * *."

■ The foregoing section must be interpreted in light of the construction of similar provisions in previous amendments to the Bankruptcy Law that, absent a contrary expression of intention, the statute may be applied retroactively only with respect to matters of procedure and may not be regarded as disturbing pre-existing "vested" rights: In re John G. Gasteiger & Co., Inc., 2 Cir., 25 F.2d 642. In the recent case of In re Schireson, D.C.E.D. Pa. June 22, 1940, 45 F.Supp. 416, Judge Kirkpatrick observed: "The decisions * * * in which courts have refused to make the Chandler Act applicable to proceedings instituted before its enactment were in cases in which the retroactive application of the Act would operate to divest liens, destroy priorities, or to take away interests in property which existed before the Chandler Act became law."

■ The Referee's error flowed from his construction of Section 21, sub. *l*, as dealing with substantive or, as he termed it, "fixed" rights. This section merely creates a presumption (absent under the prior bankruptcy law) in situations where a bankrupt fails to keep books and consequently fails to record cost of purchases and of sales. Presumptions being merely rules of evidence, Meeker v. Lehigh Valley R. R., 236 U.S. 412, 430, 35 S.Ct. 328, 59 L.Ed. 644, Ann.Cas.1916B, 691, and it being well established that there is no "vested" right in a rule of evidence, Luria v. United States, 231 U.S. 9, 26, 34 S.Ct. 10, 58 L.Ed. 101, it would appear that the Referee erred in finding a "fixed" right involved in the instant controversy. It may be noted also that this conclusion is supported by the recent case of In re Fisher, D.C., 32 F.Supp. 69, in which the court ruled, without discussion, that Section 21, sub. *l*, supra, applied to turn-over proceedings although the bankruptcy petition in that case was filed on June 28, 1938, nearly three months before the effective date of the Chandler Act.

As previously indicated, the Referee made no findings of fact concerning the dispute relating to the closing inventory. Since this case must be referred back to the Referee, he should make specific findings in this regard in the subsequent proceeding.

■ The final objection to be considered is that of Epstein who denies that there is any evidence to show that either he or the bankrupt corporation possessed or controlled $4,000 in merchandise or its cash equivalent at the time of the petition in bankruptcy or thereafter. Although it is true that the Trustee has the burden of establishing by clear and convincing evidence the fact of possession by the bankrupt, Oriel v. Russell, 278 U.S. 358, 49 S. Ct. 173, 73 L.Ed. 419, proof as to this may be circumstantial as well as direct. Where the trustee establishes the recent possession of the missing merchandise by the bankrupt, a rebuttable presumption of continued possession and control arises and, as stated by Judge Chesnut in his admirable discussion of the entire problem in Re Fisher, D.C., 32 F.Supp. 69, at page 73: "* * * then the burden shifts to the latter to account for its non-production, or to show inability to comply with a 'turn-over' order". In the foregoing case, the court observed also: "The referee seems to have attached considerable importance to the lapse of time between the

bankruptcy on June 28, 1938 and the application for the turn-over order about a year later, as bearing on the presumption as to continued possession. While this may apply to the merchandise itself, it does not equally apply to the probable proceeds of the disposition of the goods."

In his brief, counsel for Epstein and the bankrupt corporation has indicated a desire to adduce additional evidence on this phase of the case should the matter be referred back to the Referee and, consequently, I make no ruling here on the application of the previously stated principles to the instant case.

■■■ Before making an order, the referee should take into consideration: " * * * that the making of a turn-over order is a serious step in a bankruptcy proceeding which may involve further important consequences; and before it is finally made the fullest opportunity should be given to the parties, and especially to the bankrupt, to submit all available testimony that can have a proper bearing on the issue. Even if the bankrupt still fails to give any credible explanation of the disposition of the missing merchandise * * *, or otherwise to account therefor, still the turn-over order should not be passed if the referee is satisfied from further evidence that it is entirely beyond the power of the bankrupt to comply with the order." Ibid. See also May v. Henderson, 268 U.S. 111, 120, 45 S. Ct. 456, 69 L.Ed. 870. It must be reiterated, however, that where a presumption of continued possession is raised, it is incumbent upon the bankrupt either to account for the nonproduction of the property or to show his inability to comply with a turn-over order.

The parties should feel entirely free to offer further evidence regarding any fact questions still to be determined by the referee, and, if he desires, Epstein should be permitted to offer testimony to rebut the presumption raised by Section 21, sub. *l*, of the Chandler Act.

The case is hereby referred back to the Referee with instructions to proceed in accordance with this Opinion.

## Supplemental Opinion.

Pursuant to my ruling that Section 21, sub. *l*, of the Bankruptcy Act of 1938, 11 U.S.C.A. § 44, sub. *l*,[1] was applicable in this proceeding (opinion filed July 18, 1940), and my further instruction that the referee take additional testimony and make specific findings relative to the alleged shortage, the referee conducted a further hearing and made supplemental findings and a turn-over order on the bankrupt in the amount of $5,658.04. Although the opportunity was made available, the bankrupt did not offer any additional testimony to rebut the presumption raised by Section 21, sub. *l*, despite my specific ruling " * * * that where a presumption of continued possession is raised, it is incumbent upon the bankrupt either to account for the non-production of the property or to show his inability to comply with a turn-over order".

■■■ A review of the notes of testimony of the supplemental proceedings before the referee clearly discloses that his supplemental findings and order based upon such findings are fully justified and proper. There is no need to add further to the comprehensive discussion of the facts and the law contained in the learned referee's opinion.

Accordingly, the petition for review is denied, and the order of the referee is affirmed and confirmed.

---

[1] Section 21, sub. *l*, reads as follows: "In any proceeding under this title against a bankrupt for an accounting by him for his property or the disposition thereof, or to compel a turn-over of property by him, if his books, records, and accounts shall fail to disclose the cost to him of such property sold by him during any period under consideration, *it shall be presumed, until the contrary shall appear,* that such property was sold at a price not less than the cost thereof to him." (Emphasis supplied.)