In the Matter of the Accounting of PRESIDENT AND DIRECTORS OF THE MANHATTAN COMPANY, as Trustee under a Deed of Trust made by Carlton Land Sales Co., Inc., Petitioner. HARRY RODWIN et al., Respondents.

Supreme Court, Additional Special Term, New York County, February 9, 1943.

*Mudge, Stern, Williams & Tucker* for President and Directors of the Manhattan Company, petitioner.

*Abraham J. Halprin* for Harry Rodwin et al., individually and as successor trustees, respondents.

McLAUGHLIN, J. This is an application by the President and Directors of the Manhattan Company, the former trustee under a deed of trust executed by Carlton Land Sales Co., for an order punishing the successor trustees for contempt of court in failing to comply with the order of this court dated June 26, 1941, settling and approving the final account of said bank and fixing the compensation of said bank for its commissions and counsel fees in the sum of $17,000.

The successor trustees appeared on the return date of said motion and submitted affidavits in opposition thereto. The court thereupon referred the matter to an official referee to take proof and report as to all the issues raised by the papers submitted on said motion, and reserved decision on the motion pending the coming in and filing of the referee's report.

The report of the official referee has been received and filed, in which report the referee recommends that the successor trustees be adjudged guilty of a civil contempt of court and that they be fined the sum of $12,593.39, plus interest from August 18, 1941. A motion has been made by the bank to confirm said report and, if said sum be not paid, directing that the successor trustees be imprisoned for contempt of court until such fine is paid.

The pertinent facts appear to be as follows: On or about June 1, 1927, Carlton Land Sales Co. executed, acknowledged, and delivered to President and Directors of the Manhattan Company, as trustee, its deed of trust to secure certain bonds, obligations or notes of the company, designated in said deed of trust as the A notes and B notes, respectively. Article VII, section 2, of said deed of trust provided that the compensation of the trustee for all services rendered by it, including counsel fees, " shall be secured by the lien of this Indenture upon any money or property subject hereto, prior to the notes and coupons issued hereunder and, if the company shall fail, refuse, neglect or delay to pay the same promptly, it shall be paid from and out of any funds in the hands of the trustee applicable thereto and/or from and out of the trust estate prior to any payment therefrom to or upon the order of the company or of or on account of any of the notes or coupons." In the year 1936 all of the bonds, notes or obligations which were issued by Carlton and which were secured by this deed of trust had been paid with the exception of the B note, in the reduced amount of $531,000, which was held by the trustees of Series E of State Title and Mortgage Company. An application was thereupon made by the trustees of Series E, State Title and Mortgage Company, to remove the bank as trustee under the Carlton deed of trust and to substitute themselves as successor trustees in its place. The application was granted and, on September 24, 1936, an order was duly made by this court removing the bank as trustee; substituting the successor trustees; directing the bank to file its final account as such trustee; continuing the bank's lien for its compensation, which had been created under article VII, section 2, of the deed of trust,

until the amount of said compensation had been fixed and determined; and restraining the successor trustees, until the bank's compensation had been determined and paid, "from making any payment from and out of the trust estate prior to any payment therefrom to, or upon the order of said Carlton Land Sales Co., Inc., its successors and assigns, or of, or on account of any of the notes or coupons mentioned in said trust deed." Thereafter the bank filed its final account and moved for confirmation thereof. The successor trustees filed objections to said account and the matter was referred to an official referee to take testimony and report as to said objections. The official referee held numerous hearings, took testimony as to the said objections, and thereafter filed a report in which he recommended that the bank be surcharged in an amount in excess of $300,000. A motion was made to confirm the referee's report and the court, on said motion, modified the referee's report by reducing the amount of the surcharge to $1,774.72, plus accrued interest. Thereupon the order of June 26, 1941, was made which surcharged the bank the sum of $1,774.72, plus accrued interest, settled and approved the final account of the bank, fixed the compensation of the bank for its commissions and counsel fees in the amount of $17,000, and further provided as follows: " Ordered  *  *  *  that the sums so allowed to accountant, aggregating $17,000.00, constitute a claim and charge against and are secured by a lien upon any money or property subject to said deed of trust prior to the B note of Carlton issued and outstanding under said deed of trust and shall be paid from and out of any funds in the hands of said Successor Trustees or Accountants applicable thereto and from and out of the trust estate prior to any payment therefrom to or upon the order of Carlton or of or on account of said B note issued and outstanding under said deed of trust."

The bank then served a copy of the said order upon the successor trustees and made a formal demand for the payment of said allowances. No part of the said allowances has been paid except the sum of $2,553.07, representing the amount of the surcharge made against the bank, plus accrued interest, which sum was credited by the bank against the amounts allowed it under the order of June 26, 1941, and the further sum of $1709.01 which was paid by the successor trustees after this proceeding was commenced, leaving a balance due the bank of $12,737.92. The successor trustees refused to make any further payments on account of said allowances, claiming that they had no funds in their hands applicable thereto. Thereupon,

this motion was made to punish the successor trustees for contempt of court in failing and refusing to pay the balance due the bank on account of the allowances made in the order of June 26, 1941.

The rule is well-settled that before one can be punished for contempt in not complying with a direction of the court, the particular or precise thing to be done by the party proceeded against must be clearly and definitely stated. (*Ketchum* v. *Edwards,* 153 N. Y. 534; *Coffin* v. *Coffin,* 161 App. Div. 215.)

In considering whether the provision of the order of June 26, 1941 (*supra*), contains a direction that the successor trustees pay the amount of the said allowances to the bank, the court notes that the language of the order, in substance, is taken from article VII, section 2, of the Carlton deed of trust, which concededly merely created a lien upon the funds and property of the trust estate for the compensation of the trustee and defined the nature and priority of said lien, and indicated the fund out of which said compensation should be paid. Furthermore, the language of said order of June 26, 1941 (*supra*), has been lifted, almost verbatim, out of the order of September 24, 1936, which order continued the lien created by article VII, section 2, of the deed of trust and clearly was not a direction of payment.

The court has come to the conclusion that the provision of the order of June 26, 1941 (*supra*), fixed the amount of the bank's lien, specified the nature and priority of the said lien, and indicated the fund out of which the allowances were to be paid, but did not contain a specific direction to the successor trustees to pay the amount of the said allowances. In the absence of a specific direction for the payment of said allowances, the order is insufficient as a basis for the proceeding to punish the successor trustees for contempt.

While the successor trustees may not be punished for contempt, the order to show cause which instituted this proceeding contained a general prayer for such other and further relief as may be just, and the court is of the opinion that the bank is entitled to such relief as may properly be granted herein.

It appears that when the order of June 26, 1941, was served on the successor trustees and a formal demand was made for payment of the allowances awarded to the bank, the successor trustees had on hand, in cash, the sum of $6,834.81. It further appears that from the date of their appointment to August 15, 1941, the successor trustees had made expenditures aggregating $5,758.58, in prosecuting objections to the final account of

the bank and in the course of the operation and liquidation of the trust estate. The bank contended, and the official referee, in his report, found, that these expenditures were made in violation of the restraining provision contained in the order of September 24, 1936, and that, therefore, the successor trustees should have had on hand on June 28, 1941, the sum of $12,593.39. The court disagrees with the finding of the official referee on this matter. The restraining clause in the order of September 24, 1936, prohibited the successor trustees from making any payments to or upon the order of Carlton Land Sales Co., Inc., or of or on account of any of the notes or coupons mentioned in said trust deed, but did not, and was not intended to, prohibit the successor trustees from making the necessary disbursements incident to the operation and liquidation of the trust estate. It seems to be quite unreasonable to suppose that the court would appoint successor trustees with all the powers and duties of the original trustee and charge them with the duty of properly administering the trust estate, and, by the same order, effectively prevent them from discharging the duties, so imposed, by prohibiting them from making any disbursements whatsoever.

The question as to whether these expenditures were necessary or reasonable is not properly before the court on this application and can only be raised on the settlement of the accounts of the successor trustees. The court finds, therefore, the amount of cash in the hands of the successor trustees on August 15, 1941, to be the sum of $6,834.81.

In support of their contention that they had no funds on hand applicable to the payment of the allowances awarded to the bank, the successor trustees attempt to offset as against the sum of $6,834.81, which they had on hand, an alleged claim for administrative expenses of the Carlton trust from the date of their appointment to August 15, 1941. It appears that the individuals who are the successor trustees under the Carlton deed of trust are also the trustees in two group series of the State Title and Mortgage Company, to wit, Series E and Series C, and that the only outstanding obligation of the Carlton trust, to wit, the B note, in the reduced amount of $531,000, is one of the assets of the Series E trust; that the unpaid principal amount of the Carlton note represents 14.03 per cent of the total principal assets of the Series E and Series C trusts. It further appears that for a number of years the Series E and Series C trustees have maintained a common office, and at the end of each year have allocated the adminis-

trative costs of maintaining said office against the two series in proportion to the amount that the total principal assets of each series bear to the combined assets of both. They have determined the amount of the administrative costs of both Series E and Series C for the period from September 24, 1936, to August 15, 1941, and have computed 14.03 per cent of said amount, and seek to offset this amount, namely, $5,359.20, against the amount which they had on hand on June 28, 1941. The court is of the opinion that this attempted allocation is not proper.

It is significant that no attempt was made to allocate these expenses until after the demand for payment was made by the bank. It appears that when the motion to settle the final account of the bank was pending, the successor trustees filed an intermediate account, dated April 28, 1941, showing a balance on hand of $6,834.81, which account contained no mention of an outstanding and unpaid liability for administrative expenses. It further appears that, at the time the intermediate account was filed, the successor trustees and their counsel filed applications for allowances which they requested be paid from the balance on hand.

It may also be stated that the attempted allocation is improper and unjustified. The corpus of the Carlton trust at the time the successor trustees were appointed consisted of a mortgage on a group of unimproved lots at Throggs Neck, in the borough of Bronx, New York City, securing the B note of $531,000 held by themselves as trustees of Series E. Taxes had not been paid on these lots since 1928 and there was little, if any, equity in the real estate over and above the tax arrears. No interest or income was being received on the B note or by the trustees under the deed of trust. Under these circumstances, the successor trustees of the Carlton trust were not warranted in having an office, employing an office force and paying salaries to office help. There were no certificate holders or bondholders, other than the trustees themselves, who, as trustees of Series E, held the B note. There was no need for an office.

The attempted allocation of the administrative expenses will not be permitted. It may not be done, as the real purpose thus accomplished has been to improperly defeat the bank's right to payment of its allowances.

The court holds that the sum of $6,834.81, in the hands of the successor trustees, should be paid to the bank on account of the allowances awarded it by the order of June 26, 1941, and that the lien of the bank upon the assets of the trust estate and

upon any funds which may hereafter come into the hands of the successor trustees should be continued until the balance due the bank is fully paid.

The report of the official referee is modified to the extent indicated in the foregoing memorandum and the motion to punish the successor trustees for contempt of court is denied, but the successor trustees are directed to pay to the bank, within twenty days after service of a copy of the order to be entered hereon, the sum of $6,834.81 on account of the allowances awarded the bank by the order of June 26, 1941. Settle order.