DANIEL W. KETCHUM, Respondent, *v.* FRANCES EDWARDS, Appellant.

1. CONTEMPT — VIOLATION OF MANDATE. To warrant a punishment for contempt in violating a judgment or order of the court, the mandate alleged to have been violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated.

2. RIGHT OF WAY — SCOPE OF JUDGMENT DIRECTING REMOVAL OF OBSTRUCTIONS. A general direction, restraining the defendant from erecting or maintaining "any obstruction" in a right of way described as "two rods wide, extending from the southerly end of the highway near the residence of the defendant, southerly to the said three-rod road," in a judgment in an action brought, not for a location of the right of way, but to compel the removal of fences from its termini, *held*, to fairly cover only acts like those upon which the action was based, namely, the shutting off of the way by obstructions preventing a passage over the defendant's land to the highway, and, hence, not to warrant the summary punishment of the defendant as for a contempt, on affidavits, because, after she had removed the fences at the ends of the way, she had erected obstructions to protect the lawn immediately in front of her residence, which left a free passage to the highway, of the prescribed width, but which turned the route somewhat from the line which the plaintiff claimed had been originally established by an oral agreement and by user.

*Ketchum* v. *Edwards*, 6 App. Div. 160, reversed.

(Argued June 22, 1897; decided October 5, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 6, 1897, which affirmed an order of Special Term.

The order, from the affirmance of which this appeal is taken, adjudged the defendant in contempt in violating that part of the final judgment in this action which restrained her from at any time "erecting or maintaining any obstructions" in a right of way across her premises, extending from the southerly end of a highway near the residence of the defendant, southerly to a three-rod road bounding the northerly line of plaintiff's land. One Alanson Edwards, in 1886, was the owner of land in the village of Centre Moriches, bounded on the east by the East Seenix creek. He had erected and occupied a dwelling fronting the creek. There was a high-

way which extended to and terminated at his northerly line, at a point north and east of his dwelling, which was located at about midway between his north line and the three-rod road on the south, above referred to. The whole premises were open to the creek. In the year mentioned Edwards conveyed to the plaintiff about eighteen acres off the south part of his land and south of his dwelling, and provided in the deed that the plaintiff should have a right of way two rods wide, from the termination of the highway mentioned, across the lands of the grantor, to intersect a three-rod road laid out by the parties, running easterly and westerly along the northerly boundary of the eighteen acres conveyed to the plaintiff. In 1894 the defendant, who had succeeded to the title of Edwards, erected fences along the northerly and southerly lines of his land, thereby preventing the plaintiff from crossing his land and from any access from his premises to the highway at the north. This action was thereupon commenced. The plaintiff in his complaint alleged the existence of the three-rod road on the northerly boundary of his land, defining it by courses and distances (as to which no question now arises), and he further alleged that he had on and after 1886, and ought still to have, "an unobstructed right of way two rods wide from the southerly end of the highway near the residence of the defendant, southerly to the said three-rod road," and that in October and November, 1894, the defendant unlawfully obstructed said two-rod right of way by erecting two fences across said right of way "and still wrongfully continues such obstructions," etc. The complaint demanded judgment (1) that the defendant remove the said obstructions from said roads or rights of way; (2) that she be restrained from erecting or maintaining any obstructions on said roads or rights of way; and (3) that the plaintiff recover damages and costs. The judgment (rendered on default of answering, the answer originally interposed having been withdrawn) followed the demand for relief in the complaint and adjudged (1) that the defendant shall remove all obstructions from the three-rod

road; (2) that the defendant "remove all obstructions from the right of way two rods wide, extending from the southerly end of the highway near the residence of the defendant, southerly to the said three-rod road;" (3) "that the said Frances Edwards is hereby forever restrained from erecting or maintaining any obstruction on said road or right of way." The defendant, after the judgment was rendered, removed the fence in the three-rod road and also the fence which closed the highway at the north, so that the plaintiff could pass from his land across the defendant's land in front of the dwelling to the highway, within a space from 60 to 100 feet in width between the residence of the defendant and the creek. The defendant, however, to protect the lawn immediately in front of her dwelling from invasion by travel, placed obstructions so as to compel persons going from the defendant's land to the highway across her land, to pass easterly of the obstructions and nearer the creek than, as the plaintiff claims, they were accustomed to go after the deed of 1886 and up to the time of the erection of the fences in 1894.

There is no controversy that the way provided by the defendant is convenient and suitable, and it seems to protect the defendant's lawn in the immediate vicinity of her house from invasion and contributes to the comfort and enjoyment of her premises, while at the same time all substantial rights of the plaintiff are protected. But the plaintiff, insisting that he was entitled to travel by what he claims was the old path located by user and intended by the parties to the grant of 1886, and that this particular way was protected by the judgment in the action, instituted proceedings for contempt. The judge, at Special Term, appointed a referee to take the evidence and report the facts, and on the coming in of the report adjudged that the plaintiff was entitled to cross on what was called the old path, and that the defendant was guilty of contempt in obstructing it.

*Nicoll Floyd* for appellant. The learned justice at Special Term erred in determining upon the affidavit of the plaintiff's

attorney that the route over which the plaintiff was entitled
to exercise the two-rod right of way, given him by the judg-
ment in the action, had been theretofore fixed. (*Gayetty* v.
*Bethune*, 14 Mass. 49; *Doyle* v. *M. E. R. Co.*, 136 N. Y.
505.) The decision of the learned justice at Special Term,
holding the defendant guilty of contempt and inflicting a fine
upon her, was erroneous. ( *Wynkoop* v. *Burger*, 12 Johns.
222; *Jemison* v. *Walker*, 11 Gray, 426; *Brooks* v. *Curtis*,
4 Lans. 283; *Holmes* v. *Seely*, 19 Wend. 507; Gerard on Tit.
[4th ed.] 765; *Robbins* v. *Borman*, 1 Pick. 122; *Adams* v.
*Emerson*, 6 Pick. 57; *O'Linda* v. *Lothrop*, 21 Pick. 292;
*Codman* v. *Evans*, 5 Allen, 308; *Hancock* v. *Wentworth*, 5
Metc. 446; *Morgan* v. *Moore*, 3 Gray, 319.)

*Elliott J. Smith* for respondent. It is not extending or
enlarging the judgment for the court to ascertain in contempt
proceedings the location of the two-rod right of way. (*Jaques*
v. *M. E. Church*, 17 Johns. 548; *Beebe* v. *Russell*, 19 How.
[U. S.] 283; *Johnson* v. *Everett*, 9 Paige, 636; Black on
Judgments, § 41.) It is immaterial whether defendant will-
fully disobeyed the injunction or not. (90 N. Y. 406; 17 N.
Y. S. R. 515.)

ANDREWS, Ch. J. The judgment determined that the
plaintiff had a right of way over the premises of the defend-
ant, which was obstructed by the fences erected by her on the
north and south lines of her land. But it did not locate the
way across the defendant's land in front of her dwelling. It
gave the width of the way, the starting point at the north,
and described it as extending therefrom (that is, from the
southerly end of the public highway) southerly to the three-
rod road. Between these points its course was left undefined.
A straight line between these points would not mark the way
which either party claims. Not only did the judgment omit
to define the location of the road across the defendant's land,
except to give the starting point at the public highway
and its termination at the three-rod road, but its location

and course between these points was neither described in the complaint, nor were they material to be ascertained in order to entitle the plaintiff to a judgment for the removal of the obstructions of which he complained. The fences erected by the defendant extended from the creek westerly along the north and south lines of her premises and necessarily obstructed the way. The removal of these obstructions would open the way, whether it passed on its course near to the piazza of the defendant's house, as the plaintiff now claims, or a few feet further to the east, as the defendant insists. If the plaintiff had brought his action to have the way located, as well as to have the obstructions at the ends removed, the court could properly have included this relief in its judgment, but this was not one of the purposes of the action. The judgment, while it does not purport to locate the way, except as stated, contains a general clause restraining the defendant from creating or maintaining "any obstruction" on said right of way. Upon this general clause in the judgment the contempt proceedings are based, and the judge at Special Term, acting upon affidavits presented on behalf of the plaintiff, to the effect that a particular route had been orally agreed upon by the parties to the deed of 1886, and was followed by user, and that the defendant, after the judgment, had placed obstructions therein so as to turn the travel across her lot a little further to the east, which were met by affidavits of the defendant stating the circumstances substantially as set forth in the statement of facts, ordered a referee to take proof, and upon the coming in of the report of the referee summarily adjudged the defendant guilty of contempt. So that, without a hearing and trial in ordinary course, the court has summarily determined a question of property right not raised by the pleadings in the action nor determined by the judgment, and has subjected the defendant to a fine, with the alternative of imprisonment and costs, on the theory that what she did was a violation of the injunction embraced in the judgment.

It is, of course, not subject to debate that the order of a court having jurisdiction must be implicitly obeyed, however

erroneous it may be, and that it is no answer for one called upon to answer for disobedience that the order or judgment was broader than the facts warranted, or gave relief beyond what was demanded or what the court, upon the facts, was justified in awarding.    The interest in maintaining respect for the action of courts, and of orderly jurisprudence, forbids that litigants should be permitted, under plea of hardship or injustice, real or pretended, to nullify or set at nought orders or decrees, however improvidently made, even if it may seem certain that the court acted in granting them under misapprehension or mistake.    (*People ex rel.* v. *Sturtevant,* 9 N. Y. 263 ; *Erie R. Co.* v. *Ramsey,* 45 id. 637 ; *Koehler* v. *Farmers', etc., Natl. Bank,* 117 id. 661 ; *People ex rel.* v. *Pendleton,* 64 id. 622 ; Hughes on Injunc. §§ 1416, 1417 ; Beach on Injunc. 264.) If, therefore, the provision in the judgment in this case, restraining the defendant from maintaining any obstructions in the way mentioned, fairly construed, prohibits not only the closing up of the way by the defendant, but any interference whatever with the way as it in fact and law existed, it may be that what was done by the defendant was a violation of the judgment.    But as punishment for contempt involves, or may involve, not only loss of property but liberty, it is a reasonable requirement that the mandate alleged to be violated should be, clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated.

We think it plain that if a new action should be brought by the plaintiff to establish the location of the way, the judgment in the present action could not be regarded as determining its course and location through the lands of the defendant.    This fact is not decisive of the question now before us, because the court may make a judgment or order broader than the issue to be determined would warrant, and this would be no justification for disobedience to the mandate so long as it stood unmodified or unreversed.    But it is a circumstance of some weight in determining the real scope and operative effect of the clause in the judgment in question, which we suppose is

always to be considered in passing upon an alleged contempt of a judgment or order. It seems to us that all that the court intended by the clause, and all that fairly can be deemed included in the mandate, were acts like those theretofore committed by the defendant, upon which the action was based, namely, the shutting off the way by obstructions preventing the plaintiff from passing over the defendant's land to the highway. If the broader construction claimed by the plaintiff is given, the defendant will be deprived of the opportunity of litigating the location of the way by user or agreement, or at all events will be subjected to punishment in this proceeding for an act not, as we think, within the spirit or purpose of the mandate.

This leads to a reversal of the order, with provision for restitution, with costs.

All concur, except GRAY, J., absent.

Order reversed.