## COOPER, TRUSTEE IN BANKRUPTCY, *v.* DASHER.

No. 30. Argued October 18, 1933.—Decided November 6, 1933.

*Mr. C. Edmund Worth* for petitioner.

*Mr. Burton G. Henson,* with whom *Mr. W. K. Zewadski, Jr.,* was on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

During the night immediately following the filing of a bankruptcy petition the president of a bankrupt corporation withdrew the bulk of the merchandise by stealth and lodged it in hiding places known only to himself. Part has been retrieved; part is still concealed. The District Court, confirming the report of a referee, made a turnover order for the return by the respondent of the property withheld. On the ground that the order was void for indefiniteness the Court of Appeals for the Fifth Circuit reversed it, except as to a few items no longer contested. 63 F. (2d) 749. A writ of certiorari, sued out by the trustee in bankruptcy, brings the case here.

The bankrupt corporation began the business of the sale of drugs on May 26, 1930, and was thrown into bankruptcy the following February. The respondent, Dasher, was its president, and he, his wife and his infant son were the holders of the shares. The cost of all the merchandise owned by the bankrupt during the life of the business was $72,551.82; the sales, less the gross profits, were $23,056.01. There should have been on hand at the bankruptcy mer-

chandise of the value at cost of $49,495.81. Only $29,-754.16 in value has come into the possession of the trustee or the receiver. Much of this would have been lost to the creditors if it had not been unearthed from the hiding-places where it had been concealed by the respondent. The value at cost of the undelivered residue is nearly $20,000. Of this residue a few items ($583.69) have identifying marks or labels. The propriety of a turnover order as to these is no longer disputed. There is left an ultimate residue ($19,157.66 in value) secreted by the respondent and still withheld from the estate.

The referee, after giving the respondent an opportunity to account for the disposition of the assets, has ordered the return of this undelivered residue. The findings describe it as the "balance of merchandise in the hands of the said R. F. Dasher at the time of bankruptcy at a cost price value of $19,157.66, of a class of merchandise shown by the proofs of claim to have been purchased on the credit of the bankrupt corporation and delivered to it, and of such a class of merchandise as is usually carried and sold in a retail drug store, but which is not capable of a more specific description, such more specific description being known only to the respondent in this cause." The description in the findings is repeated in the order with unimportant verbal changes.

The respondent has made away with goods belonging to the estate and defiantly withholds them. So the referee has found upon evidence not in the return and hence presumably sufficient. The process of computation and inference outlined in his report and leading up to his conclusion has support in many cases. See, e.g., *In re H. Magen Co.*, 10 F. (2d) 91, 93, 94; *In re Chavkin*, 249 Fed. 342; *In re Stavrahn*, 174 Fed. 330; *In re Levy & Co.*, 142 Fed. 442; *Sheinman* v. *Chalmers*, 33 F. (2d) 902; *In re Cohan*, 41 F. (2d) 632. The abstraction of the merchandise being evidenced by clear and convincing proof, there

is no doubt about the jurisdiction of the court to direct a summary return. *Oriel* v. *Russell,* 278 U.S. 358. The respondent seeks to thwart the exercise of this conceded jurisdiction by the objection that the merchandise is not sufficiently described. He says that instead of the general description in the findings and the order there should be an inventory of items. The drugs, the perfumery, the surgical appliances and the many miscellaneous articles that make up the stock in trade of a modern drug store should be set forth, he insists, in particular schedules. Only thus, we are told, will the respondent be in a position to understand the mandate to which obedience is due.

Misunderstanding of the mandate is upon the facts in this record an illusory peril. The order gives the only description that the nature of the case allows. The respondent, and no one else, is in a position to supply a better one. The mandate is addressed to him, and to him its meaning is definite, however indefinite to others. If it is clear enough to be understood, it is clear enough to be obeyed. "All evidence," said Lord Mansfield in *Blatch* v. *Archer,* 1 Cowper 63, 65, " is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." *Kirby* v. *Tallmadge,* 160 U.S. 379, 383. The validity of this order is to be subjected to a kindred test. Words after all are symbols, and the significance of the symbols varies with the knowledge and experience of the mind receiving them. The certainty of a description is always a matter of degree. *Doherty* v. *Hill,* 144 Mass. 465; 11 N.E. 581; *Marks* v. *Cowdin,* 226 N.Y. 138, 143; 123 N.E. 139. " In every case the words must be translated into things and facts by parol evidence." Holmes, J., in *Doherty* v. *Hill, supra,* p. 468. How many identifying tokens we are to exact the reason and common sense of the situation must tell us. There are times when a restraining order enjoins the commission of

acts that are not within the peculiar knowledge of the one to be enjoined. *In re Huntley,* 85 Fed. 889, 893; cf. *Ketchum* v. *Edwards,* 153 N.Y. 534, 539; 47 N.E. 918. In that event the requirement of definiteness assumes a new importance, and failure to give heed to it may even make the order void. No doubt it is wise, irrespective of the knowledge of the parties, to make the terms of the order as definite as possible. The findings of the referee show that this is what was done. To insist upon more would be to sacrifice the substance of the right to the magic of a formula. In the ensuing war of words the wrongdoer would be enabled to slip away from his pursuers and take advantage of his wrong.

An argument is based upon embarrassments that may clog the enforcement of other remedies hereafter. The respondent, it is said, may refuse to comply with the order and may be sent to jail till he obeys. If later he repents and tenders a stock of goods to the trustee, the marshal will not know whether the tender is complete and will be unable to determine whether to hold him or to let him go. See *In re Miller & Harbaugh,* 54 F. (2d) 612, 616. Embarrassments such as these, contingent and imaginary, will be resolved when they develop. The description of the merchandise might be much more definite than it is without enabling a marshal to identify a stock in trade, unaided by the advice of those acquainted with the business. Besides, the court is always in reserve, with capacity to act when the dispute becomes acute. If the respondent makes a genuine effort to restore the secreted goods, there will probably be little difficulty in determining whether the tender is sufficient. At present, the marshal is not before us praying for instructions, nor is the respondent yet in jail. We are not to presume that the order will be flouted. Let the respondent yield obedience to a mandate intelligible to him, and his liberty is then assured. The

law will not be overpatient with his protest that if he persists in his defiance, he may be caught in his own snares.

The form of turnover orders in bankruptcy proceedings has been much considered in the federal courts. It has provoked a difference of opinion. In accord with the decision of the court below are decisions of the Court of Appeals for the ninth circuit and the first. *In re Miller & Harbaugh,* 54 F. (2d) 612; *In re Goldman,* 62 F. (2d) 421, one judge dissenting. The contrary view has been taken in the fourth circuit and the second. *Kirsner* v. *Taliaferro,* 202 Fed. 51; *In re H. Magen Co.,* 10 F. (2d) 91. Many orders not unlike the one in question have been upheld *sub silentio* in the absence of objection. *Prela* v. *Hubshman,* 278 U.S. 358; *Epstein* v. *Steinfeld,* 210 Fed. 236; *Sheinman* v. *Chalmers,* 33 F. (2d) 902; *In re Cohan,* 41 F. (2d) 632.

The order should be reversed and the cause remanded to the District Court with instructions to proceed in accordance with this opinion.

*Reversed.*