66

## In re MAYERSON.
### No. 20738.

District Court, E. D. Pennsylvania.

July 31, 1941.

Wexler & Weisman, of Philadelphia, Pa. (M. E. Maurer, of Philadelphia, Pa., of counsel), for plaintiff.

George F. Lowenthal, of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This is a petition of the trustee in bankruptcy for an order on the bankrupt to turn over and deliver to the trustee merchandise and proceeds derived from sales "in the amount of at least $7,699.16".

The bankrupt was engaged in the business of selling general merchandise at retail for several years prior to the filing of his involuntary petition in bankruptcy.

Voluminous testimony was taken before the referee, who has filed an opinion directing that the turn-over petition be dismissed.

The testimony before the referee was largely a matter of accounting. The trustee introduced considerable accounting testimony in support of his contention that a turn-over order should be entered.

The bankrupt, by sharply contradictory accounting testimony, sought to explain the deficiency. The referee decided that "it is unnecessary and useless to discuss the methods employed to arrive at the accounting conclusions" because he was of the opinion that to support an order to turn over property the specific property would have to be identified, "and there has been no evidence produced to identify any specific property that is to be turned over by the bankrupt".

The latter is clearly in error, in view of the well considered opinion of the late Mr. Justice Cardozo in Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 7, 78 L.Ed. 203, which is dispositive of the issue.

In Cooper v. Dasher, supra, there was a turn-over order by the referee, which was confirmed by the District Court, and reversed by the Court of Appeals for the 5th Circuit, 63 F.2d 749, on the ground that the order was void for indefiniteness. The goods in question were part of the stock in trade of a drug business. Their cost had been computed by deducting from the cost of all goods owned by the bankrupt in the life of the business the total amount of sales, less gross profits, and the cost value of the goods that had come to the trustee or receiver. The description in the order was as follows:

"Balance of merchandise in the hands of the said R. F. Dasher at the time of bankruptcy at a cost price value of $19,157.66, of a class of merchandise shown by the proofs of claim to have been purchased on the credit of the bankrupt corporation and delivered to it, and of such a class of merchandise as is usually carried and sold in a retail drug store, but which is not capable of a more specific description, such more specific description being known only to the respondent in this cause."

In upholding the turn-over order, Mr. Justice Cardozo stated in the opinion of the Supreme Court (290 U.S. pages 109, 110, 54 S.Ct. page 7, 78 L.Ed. 203):

"* * * The respondent seeks to thwart the exercise of this conceded jurisdiction by the objection that the merchandise is not sufficiently described. He says that instead of the general description in the findings and the order there should be an inventory of items. The drugs, the perfumery, the surgical appliances, and the many miscellaneous articles that make up the stock in trade of a modern drug store should be set forth, he insists, in particular

schedules. Only thus, we are told, will the respondent be in a position to understand the mandate to which obedience is due.

"Misunderstanding of the mandate is upon the facts in this record an illusory peril. The order gives the only description that the nature of the case allows. The respondent, and no one else, is in a position to supply a better one. The mandate is addressed to him, and to him its meaning is definite, however indefinite to others. If it is clear enough to be understood, it is clear enough to be obeyed. 'All evidence,' said Lord Mansfield in Blatch v. Archer, [1] Cowper 63, 65, 'is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.' Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463. The validity of this order is to be subjected to a kindred test. Words after all are symbols, and the significance of the symbols varies with the knowledge and experience of the mind receiving them. The certainty of a description is always a matter of degree. Doherty v. Hill, 144 Mass. 465, 11 N.E. 581; Marks v. Cowdin, 226 N.Y. 138, 143, 123 N.E. 139. 'In every case the words used might be translated into things and facts by parol evidence.' Holmes, J., in Doherty v. Hill, supra, 144 Mass. 465, [p.] 468, 11 N.E. 581, 583. How many identifying tokens we are to exact the reason and common sense of the situation must tell us. There are times when a restraining order enjoins the commission of acts that are not within the peculiar knowledge of the one to be enjoined. In re Huntley [9 Cir.] 85 F. 889, 893; cf. Ketchum v. Edwards, 153 N.Y. 534, 539, 47 N.E. 918. In that event the requirement of definiteness assumes a new importance, and failure to give heed to it may even make the order void. No doubt it is wise, irrespective of the knowledge of the parties, to make the terms of the order as definite as possible. The findings of the referee show that this is what was done. To insist upon more would be to sacrifice the substance of the right to the magic of a formula. In the ensuing war of words the wrongdoer would be enabled to slip away from his pursuers and take advantage of his wrong."

In view of the ruling in Cooper v. Dasher, supra, it is unnecessary to consider the many authorities cited by counsel on both sides.

The record is accordingly referred back to the referee in order that he may make specific findings from the evidence produced before him as to which of the accounting conclusions contended for by the respective parties is sustained by the evidence, and to make his order accordingly.