## In re AMDUR.

### No. 8180.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 5, 1943.

Decided Aug. 16, 1943.

Harry Coplan, of Wilkes-Barre, Pa. (E. F. McGovern, of Wilkes-Barre, Pa., on the brief), for appellant.

Morris M. Wexler, of Philadelphia, Pa. (Wexler & Weisman, of Philadelphia, Pa., and Robert J. Doran, and Reynolds & Reynolds, all of Wilkes-Barre, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

An involuntary petition in bankruptcy was filed against Daniel Amdur in the District Court for the Middle District of Pennsylvania on April 18, 1941. A receiver, who later was elected trustee, was appointed April 22, 1941 and took possession of Amdur's property the following day. On June 9, 1941 Amdur was adjudicated a bankrupt. Upon petition of the trustee the bankrupt on November 5, 1941 was ordered by the referee in bankruptcy to turn over merchandise of the cost value of $42,595 or its equivalent in value to the trustee. This turnover order was affirmed by the district court on February 18, 1942. No appeal was taken by the bankrupt from that order of the court. On April 24, 1942 the referee found the bankrupt in contempt and forwarded his finding to the district court. On October 19, 1942 the court adjudged the bankrupt to be in contempt. This appeal is from the order adjudging the bankrupt in contempt.

The bankrupt seeks upon this appeal to attack the validity of the turnover order.[1] His attack is exactly the same as that which he made in the district court to the effect that a turnover order may not be based upon inventory shortages revealed by accounting methods only and that the shortages were erroneously deduced because based upon an inconclusive opening inventory. The bankrupt thus seeks to relitigate the issues already determined by the district court in its order directing the bankrupt to turn over the missing merchandise or its equivalent. Upon this appeal, however, we are concerned only with the court's order adjudging the bankrupt in contempt. Under the rule followed in this circuit, recently applied by this court in the case of In re Eisenberg, 3 Cir., 1942, 130 F.2d 160, the issues presented in a turnover proceeding are quite distinct from those which are raised in a proceeding to punish a delinquent for contempt of a turnover order. To repeat the rule laid down in our cases: In a turnover proceeding the issues adjudicated are whether the person proceeded against had possession or control of property belonging to the bankrupt's estate at the time of the filing of the petition in bankruptcy or at the latest at the time the receiver or trustee took possession of his property[2] and whether he failed to deliver that property to the trustee. In a contempt proceeding brought to punish a delinquent for his failure to obey a turnover order the sole issue is whether the delinquent's failure to obey the order is excused by reason of events which have occurred since the date as of which the court in the turnover proceeding found that he had the property in his possession or under his control.

It will thus be seen that the turnover order of the district court, from which no appeal was taken, is res judicata as to the fact that the bankrupt failed to turn over to the trustee on April 23, 1941 merchandise having the cost value of $42,595 or its equivalent, which was then in his possession or under his control. This we must accept as a fact no longer open to attack. As was said in Oriel v. Russell, 1929, 278 U.S. 358, 363, 49 S.Ct. 173, 174, 73 L.Ed. 419: "The [turnover] proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court in passing on the issue under such a turnover motion should therefore require clear evidence of the justice of such an order before it is made. Being made, it should be given weight in the future proceedings as one that may not be collaterally attacked by an effort to try over the issue already heard and decided at the turnover."

The question for determination by the district court in the contempt proceeding was whether the bankrupt had sustained the burden of proving that his failure to obey the turnover order was justified by reason of events occurring since April 23, 1941, the date as of which the court found the

---

[1] The trustee's petition in which he pointed out that over $110,000 in merchandise was purchased by the bankrupt in a brief period of fifteen weeks immediately preceding bankruptcy, contained the following computation, based upon the results of an accountant's examination of the books of the bankrupt:

"Inventory of merchandise on hand December 31, 1940,
in accordance with Bankrupt's sworn income tax return.. $39,960.79
Purchases from January 1, 1941 to April 23, 1941......... 110,949.42

Total merchandise, at cost, in Bankrupt's possession
and to be accounted for ......................· $150,910.21
Merchandise Accounted for by Bankrupt
Sales between January 1, 1941 and April 23, 1941 at cost.... $68,109.01
Cost value of merchandise turned over to Petitioner as Receiver ......................................... 38,736.22

Total merchandise accounted for by Bankrupt at cost $106,845.23

Balance of merchandise to be accounted for at cost.... 44,064.98"

[2] In the Eisenberg case the district court in the turnover proceeding found that the merchandise in question was in the possession of the bankrupts on the day their petition was filed. In the present case the finding of possession was as of the day the receiver took possession of Amdur's property. The latter date would seem to be the more significant one in a turnover proceeding since it is the day on which it first becomes the duty of the bankrupt to deliver his property to the receiver or trustee.

bankrupt had the property in his possession or under his control. The sole question before us is whether the court erred in finding that the bankrupt failed to meet that burden. We have accordingly examined with minute care the record of the contempt proceeding before the referee, which the latter transmitted to the district court and upon which the court relied, and we find no error in the court's conclusion that the bankrupt is in contempt.

The hearing before the referee took place on March 30, 1942. At this hearing the trustee offered in evidence the testimony taken at the hearing on September 3, 1941 in the turnover proceeding, the trustee's petition for a certificate of contempt, the bankrupt's answer thereto, and the turnover order. The bankrupt then took the stand and was questioned by his attorney as follows: "There has been an order made that you are to turn over to the Trustee in this estate merchandise consisting of canned and boxed goods, tobacco, candy, cigarettes, notions and specialties and other similar merchandise of the cost value of $42,595.00 or the equivalent thereof in value. Now, as a result of the bankruptcy, you were charged with having now in your possession or under your control, certain merchandise enumerated in the Order or the equivalent thereof in value. I ask you now, do you possess or have in your control at present the said merchandise, any part of it, or the equivalent thereof in value?" Answered by the bankrupt, "No." Counsel for the trustee then asked: "Has your financial position or status changed since the 3rd day of November, 1941, the day the turnover of the merchandise or cash in the sum of $42,595. was made by this Court?" Answered by the bankrupt, "No."

At the conclusion of this testimony the referee asked: "Then you take the position that you did not have the merchandise or the proceeds thereof at the time you went into bankruptcy and that you do not have that merchandise or the equivalent thereof at the present time?" Answered by the bankrupt, "I do not." "And nothing has happened since the Turnover Order was made to change your financial position?" Answered by the bankrupt, "No."

From the testimony in the turnover proceeding it appears that the bankrupt denied that he had any merchandise in his possession at that time and that he sought to explain the shortages revealed by his books by testifying to an alleged robbery at his place of business and by attacking his own inventories. This represents the sum total of the bankrupt's case. It does not supply the requisite proof that an event occurred after April 23, 1941 by reason of which he was unable to comply with the turnover order. It amounts merely to a denial that he had the merchandise when he went into bankruptcy, an issue which, as we have seen, was decided against him by the turnover order.

The final contention of the bankrupt is that if he states that he is unable to obey a turnover order for the reason that he is physically unable to deliver up possession of the assets and there has been no contradiction of his statement, his unsupported word is sufficient to avoid an order adjudicating him in contempt of court. That the quantum of proof required of a person seeking to avoid compliance with a turnover order must be more than a mere assertion by him of inability to comply with its mandate is made abundantly clear in Toplitz v. Walser, 3 Cir., 1928, 27 F.2d 196 page 197, where this court said: "In the contempt proceeding the question of the bankrupt's possession or control and concealment of property, having already been determined, is not in issue. The sole question is whether the bankrupt is presently able to comply with the turnover order previously made and, accordingly, whether he is disobeying that order. * * * It therefore devolves upon the bankrupt in the latter proceeding to show how and when the property previously adjudged in his possession or control had passed out of his possession or control, * * *."

The order of the district court is affirmed.