**In re FRAIDIN.**

No. 9522.

District Court, D. Maryland.

May 15, 1944.

Louis J. Sagner, of Baltimore, Md., for the trustee.

Samuel J. Fisher, of Baltimore, Md., attorney for bankrupt.

CHESNUT, District Judge.

This bankruptcy case has been pending since August 26, 1940, when an involuntary petition was filed against the bankrupt, Arthur N. Fraidin. On November 10, 1942, I filed a written opinion affirming the order of Referee Parker denying the bankrupt a discharge, principally on the ground that the bankrupt had failed to keep sufficient books of account. It was not until July 23, 1943, after the bankruptcy proceeding had been pending for nearly three years, that the trustee in bankruptcy filed with Referee Kintner a petition for a turnover order against the bankrupt, which was amended October 5, 1943, and still further amended on January 27, 1944. In the trustee's last amended petition he claimed a merchandise shortage of $32,264.23. The bankrupt answered denying the existence of any shortage. He was engaged in the sale at retail of cosmetics, school supplies, razor blades, drugs and other articles. He also carried on a manufacturing establishment at his place of business where he compounded certain cosmetics. On February 17, 1944 after extended hearings, Referee Kintner dismissed the petition, and made extended and detailed findings of fact and conclusions of law. The matter is now before the court on the petition of the trustee to review this order of dismissal.

In his findings with regard to the controverted merchandise shortage, the ultimate finding of the referee was: "I therefore find there was a merchandise shortage before the bankruptcy of goods of the value of $12,761.70." In his conclusions of law the referee said:

"The burden of proof is on the trustee to establish possession by the bankrupt at the time the turnover order is made of the goods or the value thereof. This may be done by direct or circumstantial evidence and need not be proven beyond a reason-

able doubt. In re Fisher, D.C., 32 F.Supp. 69. However, as stated by Mr. Chief Justice Taft in Oriel v. Russell, 278 U.S. 358, at page 364, 49 S.Ct. 173, at page 174, 73 L. Ed. 419, 'The Court ought not to issue an order lightly or merely on a preponderance of the evidence, but only after full deliberation and satisfactory evidence * * *.' In this case the trustee relies entirely for his proof on the presumption of continuing possession of the goods or their cost value in money. Actual possession is proven as of not later than August 26, 1940, the date of bankruptcy."

He concluded that in view of the interval of more than three years between the date of bankruptcy and the hearing on the turnover order, the presumption was too weak to be sustained as a matter of fact.

Here counsel for the trustee contends on the law that as the referee found a merchandise shortage *at the time of bankruptcy*, the turnover order should have followed automatically, leaving open for consideration on possible subsequent contempt proceedings, the question as to whether the bankrupt had the then present ability to comply with the order, either by turning over the merchandise or possibly the proceeds of sale realized therefrom. In support of this contention reference is made to recent decisions in the Third Circuit, particularly in Re Eisenberg, 130 F.2d 160, 162; and In re Amdur, 137 F.2d 708, 710. These cases hold that, on an application for a turnover order, it is sufficient if the trustee shows possession and concealment of goods at the time of the bankruptcy, without the necessity of showing continued possession or ability to turn over at the time of passing the turnover order. But the contrary view, in accord with the referee's holding, is maintained by numerous cases in the Second Circuit where the subject matter has been recently much discussed, especially with regard to the sufficiency of the presumption as to continuity of possession when possession and concealment at the time of bankruptcy is found. In re Pinsky-Lapin & Co., 98 F.2d 776; Seligson v. Goldsmith, 128 F.2d 977; Robbins v. Gottbetter, 134 F.2d 843. And the view maintained in the Second Circuit seems to be clearly supported by the weight of authority. See Collier on Bankruptcy, 14th Ed. (Moore-Oglebray), vol. 2, § 23.10, p. 517 et seq., citing, among many other cases, In the Matter of J. L. Marks & Co., 7 Cir., 85 F.2d 392, and In re Rosser, 8 Cir., 101 F. 562. In this (Fourth) Circuit, the most fully considered case dealing with the general subject matter of turnover orders is Kirsner v. Taliaferro, 202 F. 51, opinion by Judge Rose. While the particular point here referred to was not there sharply presented, the opinion would seem to indicate quite clearly that in a turnover proceeding the proof should show continued possession or ability to comply at the time of the passage of the turnover order. On page 59 of 202 F., Judge Rose said:

"After all the testimony offered by both sides has been received, the referee makes up his findings. If he is of opinion from the evidence that the allegations of the trustee's petition have been sustained in whole or in part, he so finds, and he thereupon orders the bankrupt by some certain date to turn over to his trustee the assets of the estate which he holds the bankrupt unlawfully retained *and still has in his custody or under his control.*" (Italics supplied.)

The particular point seems not to have been specially considered in the only other case of the Fourth Circuit that I have been able to find. Free v. Shapiro, 5 F.2d 578. In the Fisher case in this district, supra, I assumed that continuance of possession or control by the bankrupt to the time of the turnover order was required to be found although the presumption of continued possession might properly be invoked in the absence of satisfactory evidence to the contrary.

I agree with the referee that the long interval between the date of bankruptcy and the application for the turnover order, under the circumstances of this case, precluded the effective application of the presumption as to continued possession. But apart from this, dismissal of the turnover order was justified for a different reason. In Oriel v. Russell, Chief Justice Taft said:

"We think a proceeding for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence. The charge upon which the order is asked is that the bankrupt, having possession of property which he knew should have been delivered by him to the trustees, refuses to comply with his obligation in this regard. It is a charge equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of

equity. A mere preponderance of evidence in such a case is not enough. The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court in passing on the issue under such a turnover motion should therefore require clear evidence of the justice of such an order before it is made. Being made, it should be given weight in the future proceedings as one that may not be collaterally attacked by an effort to try over the issue already heard and decided at the turnover. Thereafter on the motion for commitment the only evidence that can be considered is the evidence of something that has happened since the turnover order was made showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turnover order. * * *

"A turnover order must be regarded as a real and serious step in the bankruptcy proceedings, and should be promptly followed by commitment unless the bankrupt can show a change of situation after the turnover order relieving him from compliance."

■ The evidence in this case with regard to the merchandise shortage is not sufficiently clear and convincing to require the turnover order. This will appear from the referee's review of the matter in the findings of fact made by him. The shortage found by the referee was not of specific articles of merchandise but only a shortage in values estimated or determined by an accounting method based in material respects on uncertain data and some assumptions, more or less arbitrary, in view of the nonexistence of a proper set of books. And even this computed shortage was based on evidence apparently much less clear and convincing than existed in some of the cases where this general method of establishing shortage was found sufficient. See Cooper v. Dasher, 290 U. S. 106, 54 S.Ct. 6, 78 L.Ed. 203; Kirsner v. Taliaferro, 4 Cir., 202 F. 51; In re Eisenberg, 3 Cir., 130 F.2d 160; In re Amdur, 3 Cir., 137 F.2d 708, 710. To some extent the bankrupt contends that he was hampered in his proof that there was no real shortage, by the loss of an inventory taken by his accountant shortly before the bankruptcy, and which was apparently lost by the accountant or counsel for the trustee. And the long delay of the trustee in applying for the turnover order also has contributed to the difficulty of the case.

As was said by Chief Justice Taft in the Oriel case, "the charge * * * is * * * equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of equity." While I am not persuaded that the referee's conclusion as to the merchandise shortage in value of $12,-761.70 is clearly erroneous, there is much uncertainty in the accounting as to the extent of the shortage, and there was no such clear evidence of fraud here with respect to the shortage or to the alleged concealment or fraudulent disposition of the merchandise as existed in some of the cases. As, for instance, Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203, and In re Fisher, D.C., 32 F.Supp. 69.

■ On the issue of the turnover order it may very well be that the only burden of prima facie proof imposed on the trustee is limited to establishing possession by the bankrupt at the time of bankruptcy, and his failure to turn over·the missing goods to the trustee. But where on the trial of such an issue it also appears from the evidence that there is no reasonable probability of the continued possession or control of the missing property or its proceeds by the bankrupt, or in other words that the bankrupt cannot comply with the turnover order, it seems a futile thing to pass an order which (as was said in the Oriel case), is preliminary to a contempt proceeding, when the latter could not properly result in imprisonment for failure of the bankrupt to comply. The findings of the referee with regard to possession in this case are to this effect. And in such a situation it does not seem a proper use of judicial process to pass a turnover order for its possible in terrorem effect only.

I conclude that the order of the referee dismissing the petition for the turnover order should be and it is hereby

Affirmed.