**WOODS, Housing Expediter, v. GRAF et al.**
**Civ. A. No. 3210.**

United States District Court
N. D. New York.

July 13, 1949.

---

894

Sylvan D. Freeman, Chief, Litigation Section Office of Housing Expediter, New York City, William S. Hauser, Litigation Attorney, New York City, for plaintiff.

Byrne, Byrne, & Lowery, Syracuse, New York (D. Charles O'Brien, Syracuse, New York, of counsel) for defendants.

FOLEY, District Judge.

In this action by the Housing Expediter to recover for an alleged overcharge and to obtain a permanent injunction, this Court sitting as a trier of the facts finds itself in the usual dilemma of ascertaining where the truth lies. The overcharge is admitted by the defendant, and the defense, affirmative in its nature, is based upon the claim that the clear agreement between the parties was that the premises involved were rented for commercial purposes and were so used during the tenancy of Robert N. Blaisdell and his wife. That by such agreement and actual commercial use, the premises were not subject to the regulations of the Housing and Rent Act, 50 U.S.C.A. Appendix, § 1881 et seq., and the complaint herein must fail.

There were three witnesses sworn upon the trial. The defendant Elizabeth Graf, and the caretaker for the apartment for the defense. In rebuttal, the Government only called the wife of the real party in interest, the tenant Robert Blaisdell, to whom any overcharge would be returned by the Housing Expediter. Robert Blaisdell was not sworn as a witness, nor was any particular reason presented to the Court for his failure to be sworn. All the witnesses were reputable in background, apparently frank and honest in their demeanor, but, unfortunately, were in direct conflict as to material and vital facts surrounding the original agreement and the nature of the use of the property.

In such a situation, the only solution is to apply a cold yardstick of legal measurement to the testimony of the witnesses presented by the parties to the action. It is also necessary to follow in a scientific manner the rules of evidence in evaluating and weighing the evidence and thus deciding to which side of the lawsuit the evidence preponderates.

With this rigid method of application, and after prolonged and serious deliberation, I am inclined to the defense of the defendant.

██ First, to answer the claim of the plaintiff that the defense is an afterthought and legally questionable because

it was not pleaded specifically in the answer. This position is answered by the authority of Tillman v. National City Bank of New York, 2 Cir., 118 F.2d 631: "Failure to plead an affirmative defense is immaterial if evidence of defense is introduced and not objected to for failure to plead it and no surprise is claimed."

■ In weighing the evidence, I also lend great importance to the unexplained absence of Robert Blaisdell and his failure to testify in contradiction to the proof of the defendant. There is much legal authority in this respect.

■ Conduct which forms a basis for inference is evidence. Silence is often evidence of the most persuasive character. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Runkle v. Burnham, 153 U.S. 216, 225, 14 S.Ct. 837, 38 L.Ed. 694; Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463.

■ "'All evidence,' said Lord Mansfield in Blatch v. Archer, 1 Cowper 63, 65, 'is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted.'" Cooper v. Dasher, 290 U.S. 106, 109, 54 S.Ct. 6, 7, 78 L.Ed. 203; citing Kirby v. Tallmadge, 160 U.S. 379, 383, 16 S.Ct. 349, 40 L.Ed. 463.

■ "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." Clifton v. United States, 4 How. 242, 247, 11 L.Ed. 957; cited in Interstate Circuit v. United States, 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610.

To consider the facts, the defendant, Elizabeth Graf testified that Robert Blaisdell rented the apartment from her and stated that he "wanted to rent it for part of his business." She testified as to the physical makeup of the apartment, and it was evident that the large rooms were the living room, dining room and hallway. The remainder of the apartment consisted of relatively smaller bedroom, bath and kitchenette. She testified that large boxes, sample windows, large photo projectors were kept in the private hallway. She testified that she saw Robert Blaisdell in the dining room and living room very often signing contracts and papers and doing the paper work of his business. She testified —and this fact is admitted by all witnesses —that the said Robert Blaisdell was suffering from a severe heart condition, remained at the apartment most of the time, and apparently was a sick man. She further testified as to business calls, the stopping of the truck used in the business of the Eagle Rock Wool Insulation Company, owned by Robert Blaisdell. Elizabeth Graf testified that the landlord and tenant relationship was harmonious between the parties, even to the extent that she entered into a contract for insulation with the Blaisdell company for insulation to the apartment house, and that there was no complaint or demand by Robert Blaisdell concerning the alleged overcharge.

The caretaker, Mr. Miller, was even more impressive as to the business use of the premises. He gave estimated footage of the space of the apartment which showed that the living room, dining room and hallway constituted the major portion of the apartment. He testified that he saw building supplies, windows, rock wool insulation, very large packages stored in the hallway, four or five times a week. He swore that the truck came to the house two or three times a week; that employees came so often that he became personally familiar with several of them. He took business calls for the Blaisdells and also saw Blaisdell working on papers in the apartment. On cross-examination, he testified Blaisdell was in bed often, feeble, and suffering from a heart condition, and that he saw six or seven employees present at the house at one time. On re-direct examination, he testified that the business card "Eagle Rock Wool Insulation Co." was placed over the apartment push button in the individual entrance. He stated further that at one time a summons and complaint naming the Eagle Rock Wool Insulation Co. as defendant was tacked upon the outside door of the apartment.

The wife of Robert Blaisdell testified for the plaintiff. She denied agreement as to commercial use. That the Eagle Rock Wool Insulation Co. had a business office

in Syracuse with a telephone listing during the tenancy of the apartment. She testified that the family home was in Penn Yan, N. Y., where her son lived while the parents were in Syracuse. She denies the business card on the bell, and said that she had only one business call delivered by the landlady. She admits only that some sample windows and a photo-enlarger box were stored in the hall. She said that the truck only came on two or three occasions, and only had three employees on the truck. She specifically admits that one salesman came to the home and that her husband did use the living room and dining room occasionally for signing papers and contracts. On cross-examination, she admitted their home was in Penn Yan, that Mr. Blaisdell owned the business and knew all about it. That employees called the apartment about the business and that she brought contracts and papers to the apartment for Blaisdell to sign.

In my judgment, a fair inference from the entire evidence is that there was much more than the customary dwelling use of this apartment, described by Mrs. Blaisdell as in "tip top shape." There was a business use to some extent, and it seems the fact that the physical condition of Robert Blaisdell discloses an intent by the tenants to have a place where he could conduct his business and also rest periodically in homelike conditions.

It is my finding of fact that the landlord and tenant originally agreed that $30 per week was to be paid because the property was to be used commercially in substantial conduct of business; that the commercial and business use generally covered the predominant part of the total space of the apartment in question and that the property factually was not subject to the regulations of the Housing and Rent Act. My conclusions of law are that the Court has jurisdiction of the subject matter and parties; that the defendant has established her defense by a preponderance of the weight of evidence; that there was no violation of the Housing and Rent Act and no overcharge or need for injunction.

A judgment dismissing the complaint and denying all relief prayed for in the complaint may enter. No costs.