SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

v.

LOS ANGELES TRUST DEED & MORTGAGE EXCHANGE, Trust Deed and Mortgage Exchange, Trust Deed and Mortgage Markets, David Farrell, Oliver J. Farrell, Roy A. Bonner, Thomas Wolfe, Jr., and Stanley C. Marks, Defendants.

Civ. No. 261-58.

United States District Court
S. D. California,
Central Division.

Oct. 23, 1959.

462

Arthur E. Pennekamp, Regional Administrator, F. E. Kennamer, Jr., Chief Enforcement Attorney, San Francisco, Cal., Harlow B. Leser, John W. Vogel, Milford A. Maron, Los Angeles, Cal., for Securities and Exchange Commission.

Morgan Cuthbertson, Laguna Beach, Cal., for defendants: Los Angeles Trust Deed & Mortgage Exchange, Trust Deed & Mortgage Exchange Markets, Roy A. Bonner, Oliver J. Farrell, Thomas Wolfe, Jr., and Stanley C. Marks.

Paul J. Foley, Los Angeles, Cal., for Trust Deed & Mortgage Exchange and David Farrell.

CLARKE, District Judge.

This is an action by the Securities and Exchange Commission to impose a receivership upon Los Angeles Trust Deed & Mortgage Exchange and otherwise prevent that corporation and its directors and affiliates from continuing to deal in securities, allegedly contrary to the Securities Exchange Act, 15 U.S.C.A. § 78a et seq. The court having tried the matter and found in favor of the plaintiff Securities and Exchange Commission, an appeal was taken, and the case was returned for further proceedings in consonance with the opinion of the Ninth Circuit. 264 F.2d 199.

In preparation for the second trial, in June, 1959, the Securities and Exchange Commission moved this court for a discovery order under Federal Civil Rule 34, 28 U.S.C.A. The contemplated discovery, as contended by defendants, was very comprehensive; the court has no objection to defendants' characterization of the inquiry as a "complete audit" of defendant enterprises. The court, being acquainted with the issues in this matter from the previous trial, and having read the mandate of the Circuit Court in this matter, determined that such a comprehensive discovery procedure was rendered desirable and necessary because of the complex factual issues in this case, including, for example, the issue regarding the fair valuation to be placed upon the trust deeds in the inventory of the defendant Los Angeles Trust Deed & Mortgage Exchange, and to that end the ascertainment of the extent of the defendant's inventory of such instruments. The Court does not construe the opinion of the Ninth Circuit as defendants seem to do, to preclude a determination upon more complete evidence of the question of the financial structure and solidity of the defendant enterprises and the value of the goods they deal in. Trial of this matter, on the contrary, seems to the Court to necessitate a full and ample disclosure of the items specified in the abovementioned motions of the Securities and Exchange Commission under Rule 34.

This necessity for full disclosure, as found by this court, presents, according to the defendants, an issue as to the scope of authority granted to this court by Rule 34. In oral argument, this Court has understood defendants to contend that with reference to the scope of the documents sought to be examined, there is no precedent and no inherent power in the Court to order an "audit" or "accounting." Apparently the reason for this limitation on the employment of the judicial process to produce full disclosure of evidence pertinent to matters being litigated before a court is said to stem from the fact that such full disclosure as was contemplated by the present motion under Rule 34 is a type of *legal remedy*, which can be ordered only after a separate litigation with all of the protections of any action at law in our jurisprudence. We are not in agreement with this contention. Our understanding of the Federal Rules relating to discovery leads us to believe that the scope of discovery is congruent with the scope of the issues which will be litigated at the trial of the matter in hand. We are aware, of course, that fairness requires sufficient specificity in the subject matter of the discovery proceedings so that orders of the Court may be complied with; at present we are only discussing the relatively abstract question posed by the defendants as to whether the Court *may* under appropriate circumstances order a comprehensive survey of the documents of a corporation such as was requested in the specifications of the Securities & Exchange Commission in their motion for a Rule 34 order. We cannot perceive any cogency in the argument that discovery, in itself, amounts to any such readjustment of the rights of the parties or of one party to an action as would amount to a taking, or a penalty, or a forfeiture which would require a separate litigation to afford a due process basis for its granting. On the contrary, we are of the opinion that discovery, however thorough, is a basic element of our Federal Civil Procedure, and is limited in theory only by the scope of protection afforded by the Fourth and Fifth Amendments of the Constitution; and in practice by the reasonable requirement that it not exceed the issues which are to be tried in the instant litigation. We find therefore that this court was empowered to grant the Securities and Exchange Commission its request for a complete inspection of the records and inventory of defendant enterprises as per their motion of June 9, 1959.

Defendants raise more ardently and persistently the contention that regardless of any theoretical power of the Court to compel an "audit" of defendants, no such power was ever exercised. In other words, the order entered by this court on June 10, 1959, granting the motion of Securities and Exchange Commission under Rule 34 is a nullity. Defendants marshal a number of impressive arguments for this contention, which will be summarized and then examined seriatim. First, it is contended that the court's order, which did little more than refer to the motion of the Securities and Exchange Commission with the statement that the motion was granted, cannot be read to incorporate the terms of the motion of the Securities and Exchange Commission, and is thus so entirely vague and indefinite that no amount of good faith can secure compliance with it. Secondly, that even when the order and the motion are read as an entirety, certain requisites of Rule 34 are not met, and therefore there is no enforceable Rule 34 order. This argument may be divided for the sake of convenience into two parts: Rule 34 is said to be infringed because of failure to specify, as that rule requires, the time, place, manner and conditions of the inspection granted; and it is also defective for failure to specify with sufficient particularity the subject matter of the inspection.

■■ With regard to the first argument, that incorporation by reference is not available in Rule 34 orders, we are impressed with defendants' citation of the literal wording of the Rule: "The order shall specify the time, place, etc. * * *" Indeed, it would appear that the *order* referred to is understood by the rule in distinction to the *motion* which the order grants. If this court were considering this contention upon a motion promptly made after the entry of the apparently mistaken order entered on June 10, 1959, it would appear that the difficulty presented by the defendants could be expeditiously overcome by an amendment or supersession of the order to include the terms of the motion. In the present posture of the matter however, due weight must be given to the course of events following the putative order of June 10th. This course of events includes the acceptance by defendants of the order as entered, evidenced by their reference to it as an "order" at various times in open court, and by their "attempted compliance" with it. We are not here finding an estoppel, but when these facts are considered in connection with the overall purpose of the requirements of Rule 34 with reference to the formalities of the order, it seems apparent to the court that no prejudice occurred to the defendants simply by virtue of the failure to incorporate the terms of the motion in the wording of the order. We find that defendants themselves understood the order to incorporate the motion, and that whatever objections they have must be predicated on the order and motion read as an integrated whole. The formal requirements of Rule 34 are understood by this court as being a safeguard by means of which the orderees are insured adequate apprisal of the terms of the court's mandate to them. When failure to comply with Rule 34 results in a dispersal of that mandate, so that it is to be found in separate documents, we cannot say that the mandate is itself a nullity, except perhaps if the defendants actually relied upon the terms of the order alone. This, in fact, defendants did not do, and we therefore will consider our order, at this point of time, as incorporating validly the terms of the motion of the Securities and Exchange Commission.

We come now to the crux of defendants' arguments with reference to the order of June 10th. It is contended that the specifications included in the motion of the Securities and Exchange Commission under Rule 34 are too general and vague and comprehensive to comply with Rule 34. In this connection, let us refer

to Prof. Moore's standard treatise on Federal Practice, which at page 2443 et seq. (sec. 34.07) comments thus on Rule 34:

"The greatest area of disagreement with respect to the form of the motion under Rule 34 has to do with the required specificity of the designation of the documents, etc., involved * * *. Certain it is that some degree of designation is essential: a blanket request for all 'books, documents, papers and records which are relevant' * * * is obviously without merit. The question is how much specificity is necessary, and on this there are two schools of thought."

Professor Moore goes on to express approval of the second school, which holds it sufficient if the documents are designated by categories, as long as the categories are sufficiently defined. The case of United States v. United Shoe Machinery Co., D.C.D.Mass.1948, 76 F. Supp. 315, is cited to show that a proper approach to the question deems the purpose of the rule to be to designate definite matters that are material and about which information is desired, rather than to designate particular documents which may or may not contain the information desired. Moore says that "the question is whether a reasonable man would know what documents or things are called for." Applying these considerations to the mandate in the instant case, we cannot forbear from further quotation, this time from Justice Cardozo, whose words appear to us to be perfectly apposite to this matter:

"Misunderstanding of the mandate is upon the facts in this record an illusory peril. The order gives the only description that the nature of the case allows. The respondent, and no one else, is in a position to supply a better one. The mandate is addressed to him, and to him its meaning is definite, however indefinite to others. If it is clear enough to be understood, it is clear enough to be obeyed * * *" Cooper v. Dasher, 1933, 290 U.S. 106, 109–110, 54 S.Ct. 6, 7, 78 L.Ed. 203, 4 Moore 2448, n. 19.

We are entirely convinced that as to the identity of the documents sought to be examined, the defendants were well aware of the mandate of this court, and were not in good faith when they terminated the examination instituted by plaintiff pursuant to the order. Such termination is to be explained as a contumacious attempt to avoid the order of this court by relying indirectly and collaterally on a technical defect in the order of this court, when such defect could have been easily remedied by proper application to the Court in a direct manner. In passing, perhaps the contention of defendants that the duty to move for such rectification of the order was incumbent not on defendants, but on the Securities and Exchange Commission, is worthy of mention. We therefore mention it, and disapprove of it, for the obvious reason that violation of an order of the court is in the nature of a contempt, and when a party chooses to second-guess the court with the strong possibility that error in the game will lead to contempt remedies issuing against him, he will not be bailed out of his predicament because his adversary may also have been under an obligation to the court to advise it with respect to the matter at issue. In essence, the defendants in this case chose to make the court their adversary in the matter of the order under Rule 34, and they have ever since expressed their conviction that their contumacious refusal to comply with the substance of that order (which they well understood) will be upheld on an appeal because of the technical defects above noted, and others to be discussed infra. It is of course the privilege of the defendants to present their objections to the orders of this court by the complicated means of involving themselves in a contempt of the court

which, on appeal, they hope will test the validity of the order *ab origine*. This court is of the opinion, however, that such an appeal must be taken from a remedy for the contempt which is fitted to the circumstances of this case; and in that connection, we cannot altogether disregard the force of defendants' arguments with respect to the defects in the order of June 10th.

■■■■ Before discussing the penalty to be exacted for the disobedience of the court's order of June 10th, we must examine the last defect alleged by defendants to vitiate and nullify that order under Rule 34. This defect relates to the failure of the order (read as the integration of the motion of the Securities and Exchange Commission and the order granting that motion) to specify the time and conditions of the contemplated inspection. Again, it will be readily admitted that such failure in the order rendered it subject to attack as of the date of its entry; further, it is easy to perceive that failure to include the items required by the Rule might easily prejudice the defendants in executing the mandate of the court. However, looking again to the ensuing acts of the parties to this cause, we find that defendants requested, and the court granted, an instruction to the Securities and Exchange Commission that the inspection should be confined to the hours of the court: 10:00 a. m.—12:00 Noon, and 2:00 p. m.—4:00 p. m., and thus the time requirement was in our opinion satisfied; the order had reference to the fact that the documents in question were located at the business premises of the defendants which the event proved was taken to mean that the inspection was to be made at the defendants' premises, and the beginning of an inspection was made at those premises—thus the requirement of place was in our opinion satisfied. The court further finds that there was nothing objectionable in the manner of the attempted inspection of the specified documents, and that any

injustice in the terms and conditions of the inspection arising out of the inadvertence of our order operated to the disadvantage of the Securities and Exchange Commission, and not the defendants. Defendants chose and prescribed, in fact, the conditions of the inspection, as the record shows.

■■■■ The court has deemed it useful to thus briefly explicate its understanding of Rule 34 and of some of the relevant circumstances surrounding the controversy with respect to the order granted under it and subsequent orders related to it, even though the presentation of the defendants' motions in the midst of the trial of this matter makes a prompt ruling incumbent on the court, and places the court at some disadvantage in the composition of an orderly and exhaustive opinion on the matter. Having reached the conclusion that there was a binding order for discovery rendered on June 10, 1959 by this court, and that defendants' decision to test the import of the acknowledged errors in that order by the device of placing themselves in contempt of it, requires some sort of penalty to be exacted from the defendants, we are left with a very perplexing problem concerning a just and proper punishment for the disregard of the order shown by the defendants. Although we do not believe that the specifications required by Rule 34 impose upon the court a duty to frame such orders with the particularity of a criminal statute, on pain of reversal, as defendants seem to contend, we are aware that many of the remedies for disregard of Rule 34 orders are sufficiently drastic to persuade us that they should not be employed except in the most aggravated circumstances. The usual remedy, urged upon us in repeated draft orders by counsel for the plaintiff, is the striking of certain defenses and barring introduction of evidence which might have been produced if there had been compliance with the order in question; this amounts to a partial (or in cases such as the one at

bar where the discovery sought was very comprehensive, a complete) summary or default judgment, and as such, it is a remedy which we are loth to apply for the reason that the amount in controversy here, and the important issues involved, would make such a "default" judgment a very severe penalty indeed; so severe, it appears to us, that it would exceed the gravity of the contempt involved here. We certainly do not mean to imply that the defendants were in any sense justified in exploiting the inadvertence of the court in the manner they did; however, we believe that some lenience should be afforded them in deference to their colorable reliance upon the mistake of the court, a reliance which defendants strenuously but unconvincingly urge was entirely justified and bona fide.

This brings us directly to the issue posed by defendants' motion now before the Court, to strike a previous order granted at the motion of the plaintiff under Rule 37(b), which order attempted to punish the defendants for their disregard of the June 10th order, by granting leave to the plaintiff to move for the striking of certain evidence and testimony at the end of the trial, which plaintiff urges will be shown to be justified in that plaintiff has been prejudiced on many particular issues by non-compliance with the June 10th order. In other words, the proposed remedy for the June 10th violation was to be a reversal of the burden of proof on certain issues. This, the defendants claim, is, if anything, more oppressive to them than the striking of their answer entirely and entering a default against them. As they see it, such a procedure would amount to deeming the defendants guilty until proven innocent, a deplorable situation to be sure, if the defendants had not placed themselves in the predicament complained of by their unjustified behavior under the order of June 10th. The court has no doubt as to the propriety of applying such a remedy, should

it choose to do so in punishment of the defendants; however, after due consideration of all of the circumstances surrounding the violation of the order of June 10th, the court has decided to grant defendants' motion to vacate its order under Rule 37(b).

We believe that this decision to grant the defendants such leniency requires some further explanation, in fairness to the plaintiff in this matter, and in fairness to the defendants, whose arguments concerning their motion indicated to the court that no real hope nor desire was entertained for its granting. (Defendants evidently are relying upon this procedural point as one of their chief assets on an appeal if the substantive matter should be decided against them.) We believe that the undeniable partial responsibility of the court, through its inadvertence, for defendants' predicament, when considered in conjunction with the unfortunate fact in this case that any fitting punishment adopted by the court for defendants' contumacy would be both drastic and an impediment to the full litigation of the important issues presented in the case, leave the court in the practical dilemma of having to render its decision on the less important point of procedure or alternatively to dispose of the matter before it on its merits without reference to the disobedience of the defendants as far as the course of the litigation is concerned. We simply do not consider the procedural point, concerning the scope of the Federal Rules and the powers of the court (although undoubtedly important), as being important enough to justify the avoidance of full litigation of the substantive issues of the case. Therefore we are not disposed to adopt any remedy at this time which affects the posture of the issues in this matter, as opposed to a purely ancillary remedy which would leave the trial of the issues unaffected. Our conclusion in this regard is bolstered by the argument urged upon us by the defendants that the plaintiff Securi-

ties and Exchange Commission was also under a duty to this court promptly to notify it of any error in its order and to advise it as to the wrongful behavior of the defendants. We regret that this decision undoubtedly will cause plaintiff some hardship in the ensuing litigation, in excess of their fault in the matter of the discovery order. In all candor, it must be said however that the prejudicial denial of access by defendants to plaintiff in regard to much of the evidence in this case will to some degree affect the weight which will be given by the court to the offers in evidence of the litigants. This is unavoidable, and not, in view of defendants' responsibility for it, too deplorable; defendants seem to the court well qualified to undertake a somewhat heavier burden of persuasion on these issues than would have existed had they properly presented their dispute on the discovery order of June 10th. The energy of their advocacy is undeniable.

### Order

Now, Therefore, It Is Hereby Ordered that defendants' motion filed October 22, 1959, to vacate the order filed October 5, 1959 granting the motion of the Securities and Exchange Commission under Rule 37(b) of the Federal Rules of Civil Procedure, is granted; such order and all orders entered by this court under Rule 37(b) are hereby vacated.

It Is Further Ordered that this vacation of the order under Rule 37(b) is without prejudice to the plaintiff Securities and Exchange Commission to present motions for other orders under Rule 37(b) or for other relief for defendants' refusal to grant them access to certain documents specified in an order of this court entered on June 10, 1959, during the course of further proceedings in this matter.

It Is Further Ordered that the Clerk shall this day serve copies of this Memorandum and Order by United States mail upon the attorneys for the parties in this cause.