In re PATTERSON–MacDONALD SHIPBUILDING CO. COMMONWEALTH
OF AUSTRALIA v. BURNS et al. COMMONWEALTH OF AUSTRALIA
et al. v. McLEAN. COMMONWEALTH OF AUSTRALIA et al. v. BURNS
et al.

(Circuit Court of Appeals, Ninth Circuit. September 4, 1923.)

Nos. 3960, 3970, 3977.

1. **Bankruptcy ⊜⊐341—Reference to special master held to limit his powers to those exercised by a referee in bankruptcy.**

   A reference, on stipulation of a claimant and the trustee in bankruptcy, to a special master, authorizing him to take the evidence and make findings on the questions arising out of the proof of secured claims filed and the trustee's objections thereto, by its direction that he submit his findings and conclusions to the court "in the same manner as if sitting as a referee in bankruptcy," limited his powers to those which are exercised by such a referee.

2. **Bankruptcy ⊜⊐228—Conclusions of referee subject to review both as to law and fact, though limited in case of finding of facts on conflicting evidence.**

   Though a referee in bankruptcy be empowered to consider the whole case, weigh the evidence, and determine both the law and facts, and make an order as law and justice may require, his conclusions are subject to review by the court, both as to law and facts, subject to the limitation that, if his finding of fact be based on conflicting evidence involving questions of the credibility of witnesses heard, it will not be disturbed, unless there is cogent evidence of a mistake and miscarriage of justice.

3. **Bankruptcy ⊜⊐251—Objections to arbitration insisted on by referee waived by claimant proceeding therewith, instead of applying to court for instructions.**

   Where the special master, to whom, on stipulation of a claimant and the trustee in bankruptcy, reference of questions relative to the claim had been made, refused to proceed till after arbitration, and limited the arbitration to a certain question, claimant, by selecting an arbitrator and proceeding with the arbitration, instead of applying to the court for instructions and an order to the master, waived its objections to the arbitration.

4. **Bankruptcy ⊜⊐251—Any defect because of court's not entering order for arbitration cured by subsequent approval.**

   Any defect because of lack of prior order of the court, under Bankruptcy Act, § 26a (Comp. St. § 9610), in arbitration between claimant and trustee in bankruptcy, ordered by the special master, was cured by the court's approval of the action of the master.

5. **Damages ⊜⊐120(2)—Under contract to build several ships for a lump sum, measure for failure to build one no more than it would have been worth.**

   Under contract to build for a lump sum a number of ships, some of which would cost more than others, the measure of damages for failure to build and deliver one of them is no more than it would have been worth, had the contract been performed.

6. **Contracts ⊜⊐245(1)—Right of recovery for extras under original contract for construction of ships held not merged in new contract.**

   In view of correspondence, and the fact that signed statements evidencing the extras were not surrendered by the contractor, the right of recovery for extras due under contract for construction of 10 steamships at a price of $530,000 each *held* not merged in new contract, made after 2 of the vessels had been delivered, whereby 5 of the vessels were to be equipped with oil-burning engines, and a lump sum contract price of $8,000,000 for the 10 vessels was provided.

⊜⊐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

In the matter of the Patterson-MacDonald Shipbuilding Company, bankrupt. Exceptions to the report of the special master on the claim of the Commonwealth of Australia, presented by Mark Sheldon, as its commissioner, were overruled in part and sustained in part (284 Fed. 277), right of the trustee to judgment on counterclaim denied (284 Fed. 281), and said Commonwealth and commissioner appeal, and the trustee takes a cross-appeal. Said Commonwealth and commissioner also appeal from and petition for revision of an order of the District Court approving an allowance by a referee of claims of F. E. Burns, James Fowler, and W. C. Dawson, for services as arbitrators. Affirmed.

See, also, 288 Fed. 546; 292 Fed. 759.

On July 31, 1920, the appellants filed in bankruptcy proceedings proof of a secured claim for $831,972.09, subsequently amended to a claim for $1,231,972.09, "subject to certain unliquidated set-offs as hereinafter set forth." The consideration for the debt was alleged to be the balance due the appellants by reason of various breaches by the bankrupt of a contract dated December 18, 1918. The claim set forth certain amounts alleged to be required to complete the last ship called for by the contract, and also included certain claims for extras "which will be due to the bankrupt upon its making a proper proof of the same and liquidating the amount due therefor." On June 22, 1917, the appellants had entered into a contract with the bankrupt for the construction of 10 steamers. On September 8, 1918, the contract was changed to provide oil-burning Diesel engines instead of steam engines. On December 18, 1918, a new contract was executed. The contract of June 22, 1917, section 6, made provision for alterations, additions, substitutions, etc., and it stipulated that, "in case the parties are unable to agree as to the effect of such alterations, additions, and substitutions, or the price thereof, the dispute shall be determined as provided by section 18 hereof." Section 18 provided that, should any question arise which the parties could not adjust, "then the said question shall be settled and adjusted by arbitrators in Seattle, Wash. The shipbuilding company shall choose an arbitrator, and Braddon shall choose an arbitrator, and the two thus chosen shall choose a third, and the decision of the majority of the board so constituted shall be final." In the original contract, 10 wooden steamships were to be constructed and delivered, at a price of $530,000 each. After the delivery of 2 of the steamships and a modification changing the last 5 from steam to Diesel engines, the final contract provided for 5 steamships and 5 steamers with Diesel engines, instead of 10 wooden steamships, as in the original contract, and it provided for a lump sum contract price of $8,000,000 for 10 ships. It made other changes not necessary here to be noted.

When the claim of the appellants was filed before the referee, the trustee filed objections thereto. One objection was that no arbitration had been had or tendered as provided by the contract. Another was that the claim was unliquidated. The trustee denied that the bankrupt was indebted to the claimant, and alleged that the claimant was indebted to the bankrupt. By stipulation of the parties a special master was appointed to make findings upon the claim and the objections thereto. The trustee objected to the allowance of the claim until arbitration was had pursuant to the contractual provision for arbitration. The master ruled that, as to extra labor and material in dispute, either party had the right to demand arbitration. Thereupon the trustee and the appellants each appointed an arbitrator, and the two arbitrators selected a third, and the arbitrators received evidence and heard arguments from each side, and made an award. The inquiry was limited to the extras to be allowed the bankrupt as an offset against the ap-

pellant's claim. It appeared, further, that prior to the adjudication of bankruptcy a dispute between the appellants and the bankrupt as to the allowance of certain sums to the latter for stores and equipment had by stipulation been referred to Frank Fowler, Lloyd's surveyor at Seattle, to examine and to arbitrate, with the agreement that each should be bound by his decision. Those proceedings had not been concluded at the time of the adjudication, and the trustee and the appellants thereafter proceeded with the same, and Fowler made his findings thereon. Upon the proceedings before the special master, no evidence was taken by the master concerning the matters submitted to Fowler for arbitration, nor concerning the matter submitted to the three arbitrators. The master accepted and adopted as conclusive both the award of Fowler and the award of the arbitrators. The appellants filed exceptions to the master's report, and contended that the award of the three arbitrators was without warrant of law, and that the master should have taken all evidence upon all the issues, and should have decided all questions of fact. They further contended that the award of arbitrators was erroneous. The trustee excepted to the master's report for its failure to find and allow to the trustee, as a charge against the appellant, damages in the sum of $360,083.43 on account of appellant's breach of the contract, and made other exceptions on other grounds.

Corwin S. Shank, of Seattle, Wash., for petitioner and appellant.

Ira Bronson, J. S. Robinson, and H. B. Jones, all of Seattle, Wash., for respondents and appellees.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The appellee moves to dismiss the appeal, on the ground that the entire controversy between the parties was by their stipulation referred to a special master, with full and complete power to hear and determine the issues, and submit his findings and conclusions to the court for the entry of an appropriate judgment. Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764, is cited to the point that, upon a reference by consent of the parties of an entire case for the determination of all its issues, the findings and judgment of the master should be treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made. While the rule in Kimberly v. Arms, if applicable here, might have the effect to narrow the questions determinable on the appeal, it would not result in the dismissal of the appeal. But we think the rule there announced is not controlling in this case. The reference here was made, it is true, upon the stipulation of the parties, and it authorized the special master in chancery to take evidence and make findings upon the questions arizing out of the proof of secured claim filed on behalf of the appellants and the objections thereto by the trustee in bankruptcy; but it directed the master to submit his findings and conclusions to the court "in the same manner as if sitting as a referee in bankruptcy." The powers of the special master were thus expressly limited to those which are exercised by a referee in bankruptcy. Although a referee may be empowered to consider the whole case, which is submitted to him, weigh the evidence, and determine both the law and the facts, and make an order as law and justice may require, his conclusions are subject to review by a court of bankruptcy, both as to law and fact. It is held, however, that if his finding of fact is based

upon conflicting evidence, involving questions of the credibility of the witnesses heard before the referee, the District Judge will not disturb the finding, unless there is cogent evidence of a mistake and miscarriage of justice. Ohio Valley Bank v. Mack, 163 Fed. 159, 89 C. C. A. 605, 24 L. R. A. (N. S.) 184; In re Swift (D. C.) 118 Fed. 348. The motion to dismiss is denied.

[3, 4] The appellants assign error to the master's refusal to proceed with the matter referred to him until after arbitration should have been had, and assign error to the action of the master in limiting the arbitration to the question of the bankrupt's right to extras. The master decided that, as to the items of extras set up as a defense, set-off or counterclaim to the appellant's claim, the appellee had a right to the determination thereof by the board of arbitrators as provided in the contract. If the rulings of the master as to these matters were erroneous, the appellants had their remedy by applying to the District Court, for instructions to direct the master's course, and so, if the master erred in rejecting testimony offered by the appellants, the remedy was to apply to the District Court for an order to compel him to receive the evidence. Instead of taking timely steps to correct the master's action, the appellants selected their arbitrator and proceeded with the arbitration. By so doing it must be held that they waived their objection to the arbitration. The court below was of the opinion that arbitration as directed by the master was not inappropriate, since the contracting parties had provided that method of settling disputes which might arise in carrying out the contract, and the court held that the proceeding by arbitration was sustainable under the provisions of Bankruptcy Act, § 26a (Comp. St. § 9610), which provides:

"The trustee may, pursuant to the direction of the court, submit to arbitration any controversy arising in the settlement of the estate."

It is true that arbitration was had without formal direction by the court. The lack of such direction, however, should not be held to invalidate the arbitration. While the appellants objected to the arbitration on the ground that there was no authority to submit any question in the case to arbitration, they took no steps to correct the action of the master, or to bring the same before the court for review, and, as we have seen, they entered into the arbitration and submitted their case. In 2 Loveland, Bankruptcy, 1289, it is intimated that an application to submit to arbitration any controversy arising in the administration of an estate may be made either to the referee or to the judge. Assuming such to be the law, it would appear in this case that the master, being authorized to act as a referee in bankruptcy, could make his own order directing arbitration. But in any view it would seem that the action of the court below in approving the action of the master cured the defect, if defect there were, in the failure to enter such an order before the arbitration was begun.

[5] The appellants contend that, as the contract was for the construction of 10 ships for $8,000,000, 9 of which were constructed and delivered, the tenth never having been constructed, and no part thereof having been tendered to the appellants, the master erred in giving credit to the bankrupt for the entire contract price of the tenth ship

and then allowing the appellants $430,000, which the master found would have been the value of that ship, if it had been constructed, thereby giving to the bankrupt a profit of $370,000 by reason, it is said, of its failure to comply with its contract, thus applying to the case the rule by which damages are measured for breach of contract, and fixing as the damages the amount which would equal the difference between the value of what the plaintiff actually got and the value of what the plaintiff would have gotten, if the contract had been performed; whereas, the appellants assert, the appellants were entitled to receive the money which they had paid for the ship, under the rule that, while a special contract remains open, that is to say, unperformed, the party who has not performed cannot sue in indebitatus assumpsit to recover a compensation for what he has done until the whole shall be completed.

We think the rule so invoked is not applicable here. The appellants, according to the master's report, had breached the contract by their failure to make payments of the contract price and for extras, thereby preventing the bankrupt from carrying out the contract. The master ruled that the only allowance that should have been made to the appellants was for the salvage value of the materials on hand and the unexpended cost of carrying out the contract. There was no rescission of the contract by the appellants. Their claim as presented asserts by its own terms a demand for the "balance due by reason of breach of contract," and in the claim the appellants stated that it would require the sum of $400,000 "to complete the said ship ready for delivery," and they demanded the amount necessary to complete the tenth ship, and made no demand for return of money paid to the bankrupt on account thereof. They asserted their claim to the materials on hand for the completion of that ship, or to the proceeds thereof, and that demand has never been withdrawn. But, while the cause was on for hearing before the master, the appellants amended their claim to $800,000 as the full contract price of ship No. 10. Amendment was made on the ground that the ship had been sold and could not be delivered, and that therefore the appellants were entitled to the full contract price.

But the contract was not severable. After 2 of the steamships had been delivered, for which the appellants were to pay $530,000 each, the contract was redrafted, so as to provide for a payment of $8,000,000 in gross for 10 ships, 5 of which were to have Diesel engines, and those 5, it is to be observed, were necessarily to cost more than the others. The breach relied upon by the appellants was that the bankrupt failed to deliver the tenth ship. The gross consideration paid is not divisible, so as to afford the measure of damages. It was in evidence that the appellants had contracted to sell the tenth vessel for the sum of $430,000, and they had written to the bankrupt on March 11, 1920, advising it that the appellants would suffer damages to the extent of $430,000 by reason of the failure to deliver the tenth vessel. We do not see upon what ground it can be asserted that the master erred in not allowing the appellants more than $430,000, as was done in his report. The contract having been broken, the measure of damages

was the amount which would have been received if the contract had been kept. Benjamin v. Hillard, 23 How. 149, 16 L. Ed. 518; Pierce v. Tennessee Coal & Railroad Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591.

[6] We are not convinced that the arbitrators made a mistake in law in looking to the contract of 1917 in ascertaining the amount of extras allowable to the bankrupt over and above the lump sum named in the contract of 1918, nor do we find that there could be no extras under the contract of 1918, for the reason that the items allowed by the arbitrators as extras were included in the specifications. The correspondence of the parties justifies the conclusion that, in fixing upon the sum of $8,000,000 as the contract price in the 1918 contract, it was not intended to cover the prior extras for which compensation was then due to the bankrupt. It seems clear that in preparing the contract of 1918, the intention was to build the ships and write the specifications so as to describe the ships when completed, in order that the Australian government might know how the ships were built and what equipment was on them. The appellant was at that time proposing to sell the ships. The contract of 1918 expressly refers to plans and specifications thereafter to be prepared and approved. That the $8,000,000 price to be paid under the contract of 1918 was to include extras under the former contract is inconsistent with the fact that no surrender was made by the bankrupt of the signed statements evidencing the extras, which had theretofore been given it by the appellant.

We have carefully considered all the assignments of error, and find no ground for reversing the decree. It is accordingly affirmed, and, as the opinion herein covers the questions involved in the cases between the same parties, Nos. 3960 and 3977, judgments in those cases are also affirmed.

RUDKIN, Circuit Judge. I am far from convinced that any right of recovery for extras under the old contract was not merged in the new, but no purpose would be subserved by a dissent from the majority opinion.