FRIENDLY, Circuit Judge:
Appellant Guardian Mortgage Investors (Guardian) is an unincorporated voluntary association which is debtor in possession in a proceeding under Chapter XI of the Bankruptcy Act in the District Court for the Middle District of Florida. On December 15, 1978, it filed a plan which the bankruptcy court has preliminarily determined to be feasible and in the best interests of Guardian’s creditors.[1] The bankruptcy judge scheduled an “adjourned first meeting” of creditors to vote on the plan for October 11 and 12, 1979. His order provided that if the plan was accepted by a majority in number and amount of all creditors or each class of creditors as required by § 362(1) of the Bankruptcy Act, a further hearing on confirmation would be held on November 6 and 7. In late July, 1979, Guardian sent its debtholders a statement soliciting acceptance of the plan. It had previously submitted its soliciting materials to the Securities and Exchange Commission (SEC) as it believed was required by § 14(a) of the Securities Exchange Act.
Announcement of the plan led to the formation of defendant Unofficial Note-holder — Debentureholders Creditors Committee (the Committee). In February, 1979, it began soliciting proofs of claim and powers of attorney. In connection with this solicitation, it circulated a number of “Briefing Memorandums”, none of which were prefiled with the SEC. The general tenor of these memorandums was that the plan was too generous to senior bank creditors and was less favorable to the Noteholders and Debentureholders than Guardian’s financial condition warranted, and that Noteholders and Debentureholders should therefore refrain from accepting it when it was formally proposed. After Guardian began the solicitation of acceptances of the plan in late July, the Committee countered with a one page memorandum, dated August 4, 1979, recounting the history of the proposed plan and referring debtholders back to the Committee’s earlier memorandums; advising that blanket proofs of claim on behalf of the Noteholders and Debentureholders had been filed by the respective indenture trustees; saying that in consequence it was unnecessary for Noteholders or Debentureholders to file individual proofs of claim in order to participate in the plan if it were approved; stating that holders of over 45% of Notes and Debentures had submitted proofs of claims and powers to attorney to the Committee, which the Committee had filed with the bankruptcy court but did not intend to vote; adding that the Committee was preparing detailed comments on Guardian’s solicitation materials and a further exposition of the Committee’s view that the plan was unfair to the Noteholders and Debentureholders; and concluding that the Committee recommended that Note and Debentureholders do nothing until these new materials were received.[2]
*1022 On August 14, 1979, Guardian commenced this action against the Committee and its members in the District Court for the Southern District of New York. The gravamen of the complaint was that all the Committee’s communications which urged Noteholders and Debentureholders to refrain from filing acceptances were subject to § 14(a) of the Securities Exchange Act and the proxy rules promulgated under § 14(a); that the Committee had failed to comply with the prefiling requirement of Rule 14a-6; and that the communications were false and misleading within Rule 14a-9 in many respects, notably in neglecting to advise public debtholders that by virtue of § 362 of the Bankruptcy Act nonacceptance of the plan was the legal equivalent of a vote against it, and that failure to achieve a majority vote in favor of the plan might lead to conversion to a Chapter X proceeding or liquidation in an ordinary bankruptcy at great loss to the public debt-holders. The complaint demanded judgment enjoining defendants from soliciting proxies without complying with all applicable statutes and rules, requiring them to advise Guardian’s public debtholders that their previous solicitation had been improper, false and misleading, and ordering them to return all funds received from the public debtholders as a result of their solicitation. Guardian sought a temporary restraining order and preliminary injunction; the emergency judge denied the former but set a hearing on the latter on August 21 before Judge Cannella to whom the case had been assigned.
At the hearing the judge raised the question of subject matter jurisdiction of his own motion. After affording the parties an opportunity to be heard, he entered an order dismissing Guardian’s action on the ground that, despite the generality of the grants of jurisdiction and the breadth of the venue provisions of § 27 of the Securities Exchange Act,[3] § 311 of the Bankruptcy Act[4] mandates that the district court in which Guardian had originally filed its Chapter XI petition exercise exclusive jurisdiction over the Committee’s alleged violation of § 14(a).
Guardian appealed and sought a “stay”, in reality a temporary injunction against solicitation by the Committee, pending an expedited appeal. Judge Gurfein entered an order preventing both parties from engaging in such solicitations pending the hearing of the appeal. At the argument the Committee agreed to prefile further soliciting material with the SEC without prejudice to its position that § 14(a) of the Securities Exchange Act does not apply to solicitations of securities made in the course of a Chapter XI proceeding. We later entered an order lifting the stay as to Guardian and also as to the Committee on condition that it complied with that agreement. We now affirm Judge Cannella’s order dismissing the action.
Section 311 of the Bankruptcy Act, quoted in note 4 supra, is similar to a provision which Congress placed in § 77(a) in 1933, 47 Stat. 1467,1474, and in § 77B(a) in 1934, 48 Stat. 911,912. It is also paralleled by § 111 in Chapter X, § 411 in Chapter XII, and § 611 in Chapter XIII, all of which were *1023 included, as was § 311, in the Chandler Act of 1938, 52 Stat. 840. Without benefit of so explicit a direction, courts had long held that the effect of § 2a of the Bankruptcy Act was to give the district court in which the bankruptcy petition was filed exclusive power “over the proceedings in bankruptcy, initiated by the petitioner and ending in the distribution of assets among the creditors, the discharge of, or refusal to discharge, the bankrupt, and the closing of the estate.” 1 Collier, Bankruptcy 12.06 at 152. See id at 153-57. This power included the authority “to prevent, by proper orders, the doing of anything that will, at any stage of the proceedings, tend to embarrass the court in the equitable distribution of the estate of the bankrupt.” Id at 156-57. Virginia Iron, Coal & Coke Co. v. Olcott, 197 F. 730, 734 (4 Cir. 1912). See United States Fidelity & Guarantee Co. v. Bray, 225 U.S. 205, 216-18, 32 S.Ct. 620, 56 L.Ed. 1055 (1912); Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 739, 51 S.Ct. 270, 75 L.Ed. 645 (1931); Gross v. Irving Trust Co., 289 U.S. 342, 344-45, 53 S.Ct. 605, 77 L.Ed. 1243 (1933). The specialized jurisdictional provisions prefacing each of the reorganization Chapters retain and amplify the core of exclusive jurisdiction long granted to the bankruptcy court by § 2a. In discussing § 111, it has been stated, 6 Collier, Bankruptcy, 13.03 at 412:
The essential purpose remains: to render the authority and control of the reorganization tribunal paramount and all-embracing to the extent required to achieve the ends contemplated by Chapter X; and to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the progress of reorganization.
These remarks apply equally to § 311.
It would seem clear that a suit in a state court or in a federal court based on diversity of citizenship, which sought to enjoin soliciting the acceptance or non-acceptance of a Chapter XI arrangement on grounds other than a violation of § 14(a) of the Securities Exchange Act, would “tend to embarrass the court in the equitable distribution of the estate,” even though a confirmed arrangement is not technically a distribution, see 8 Collier, Bankruptcy 11.02 at 5. The need for maintaining the exclusive jurisdiction of the bankruptcy court would be patent if a suit in another court sought to enjoin the soiicitation of acceptances,[5] since exclusive jurisdiction safeguards the timely acceptance of a plan. Although the instant action is aimed against the frustration of the acceptance of an arrangement proposed by the debtor, the bankruptcy court is as much concerned with preserving the ability of creditors to abstain from accepting an unfair plan as with promoting their acceptance of a proper one, and the need for exclusive jurisdiction is the same.
The question is whether assuming arguendo that the solicitation here is subject to § 14(a) of the Securities Exchange Act,[6] a different result is required by the *1024 sweeping grant of jurisdiction and liberal venue provisions of § 27. That section is standard in all the securities acts, see 3 Loss, Securities Regulations 2005-07 (2nd ed. 1961), except for the provision, irrelevant here, excluding state courts from jurisdiction. Resort to § 27 is unnecessary when an issue of compliance with § 14(a) arises in a dispute over soliciting materials in a proceeding pending in a bankruptcy court; that court must apply § 14(a), if indeed it is applicable, see note 6 supra, as the governing rule of law even though the court would have no jurisdiction of an independent enforcement action under § 27. Cf. Continental Illinois National Bank & Trust Co. v. Chicago, R. I. & Pacific Ry. Co., 294 U.S. 648, 675-76, 55 S.Ct. 595, 79 L.Ed. 1110 (1935). And clearly a dispute between a debtor in possession and creditors over the contents of solicitation materials with respect to a plan is a proceeding in bankruptcy and not a “controversy” requiring plenary suit under § 23. See 2 Collier, supra, ¶¶ 23.03, 23.04[1] at 443-53. Given the jurisdiction of the bankruptcy court to apply § 14(a), that jurisdiction must be exclusive if delay and conflicting determinations are to be avoided. As this court has recently observed of § 311, “[sjtatutes which confide exclusive jurisdiction to specialized courts are not to be construed in a manner which impairs that exclusivity.” Fidelity Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2 Cir. 1975), cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). The need for exclusivity of the reorganization court’s jurisdiction over suits to enjoin solicitations with respect to a plan as violations of § 14(a) is as great as the corresponding need when a suit is based on non-statutory grounds. Here again the case would be altogether clear if the situation were reversed, i. e., if the Committee had sued in the Southern District of New York to enjoin solicitations of acceptances, with a danger of frustrating the reorganization efforts of the Florida bankruptcy court, but the principle, must work both ways.
The Supreme Court recently dealt with another situation where the letter of § 27 of the Securities Exchange Act collided with a special conflicting principle embodied in an older statute. In Radzanower v. Touche Ross & Co., 426 U.S. 148, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976), the Court held that the broad venue provisions of § 27 had not impliedly repealed the limited one of the National Bank Act, 12 U.S.C. § 94, when a defendant was a national bank. In some respects our case is a fortiori since, while the result there reached caused inconvenience for parties bringing actions against many defendants one of which was a national bank, a holding that issues concerning the application of § 14(a) of the Securities Exchange Act to the voting of securities of a debtor in a Chapter XI proceeding on a plan of arrangement can be heard only in the bankruptcy court in which the Chapter XI proceeding is pending serves the interests of all parties in speedy and accurate adjudication. It ensures that § 14(a) claims will be heard — and heard only — by a court that has unique familiarity with the debtor’s finances and the course of proceedings. Moreover, by containing the adjudication of disclosure disputes within the bankruptcy court, this result is consistent with the objective of § 1125 of the Bankruptcy Reform Act, see note 6 supra. Since the Committee has clearly subjected itself to the jurisdiction of the bankruptcy court, there can be no doubt of that court’s ability to afford Guardian whatever relief it deserves.
The order dismissing the complaint for want of jurisdiction is affirmed.

. The extent of such approval should not be exaggerated. The court said: “If we were at a confirmation hearing, I’m not really sure that I would find just in and of itself that this [plan] is in the best interest . . .

. The contents of the August 4 memorandum were communicated orally to the SEC prior to distribution, despite the belief of Committee counsel that this was not required. The Committee also prefíled a lengthier memorandum on July 31, 1979, which elicited a number of comments from the SEC, but it did not distribute this. Guardian argues that the August 4 memorandum did not comply with the SEC comments on the July 31 memorandum. The *1022 Committee counters that the August 4 communication was a “stop, look and listen” letter which, as claimed, was cleared with the SEC by telephone and was to be followed by other materials complying with the SEC’s written comments.

. The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. . Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business
15 U.S.C. § 78aa (1976).

. Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located.

. Indeed, if the suit were against solicitation by the debtor, it would be subject to the automatic stay provision of Bankruptcy Rule ll-44(a).

. Guardian’s Notes and Debentures admittedly were securities registered pursuant to section 12 of the Securities Exchange Act. The Committee’s principal basis for contending that § 14(a) nevertheless does not apply is that Bankruptcy Rule 208, entitled “Solicitation and Voting of Proxies”, which the Advisory Committee has described as “a comprehensive regulation of solicitation and voting or proxies in bankruptcy cases,” ousts § 14(a). Guardian answers that any such preemption is precluded by Rule 11-28, which in pertinent part reads “Bankruptcy Rule 208 applies in Chapter XI cases, except that the rule does not apply to the solicitation of the acceptance of a plan, or to the related proof of claim that does not contain a proxy . . and also that Rule 208 is addressed only to “bankruptcy” matters and not to fraudulent or misleading statements or the filing requirements of the SEC’s Rule 14a-6 when these would apply if the issuer were not in Chapter XI. We find it unnecessary to and do not pass on this substantive issue.
Section 1125(d) of the Bankruptcy Reform Act of 1978 clearly establishes substantive preemption for the bankruptcy court as against the Securities Exchange Act in a case like this but also requires that court to approve the “disclosure statement” “as containing adequate *1024 information”, § 1125(b). The Bankruptcy Reform Act becomes effective October 1, 1979, but, by virtue of § 403(a), will not apply to Guardian’s Chapter XI proceeding.