## In re GUILLOTINE SPLICER CORP., Bankrupt.

### Howard S. DORRIS, Trustee, Estate of Guillotine Splicer Corp., Bankrupt, Plaintiff,

v.

### Richard WRIGHT, Defendant.

**Bankruptcy No. 78–B–178.**

United States Bankruptcy Court, E. D. New York at Westbury.

Jan. 24, 1980.

Goldman, Horowitz & Cherno, Mineola, N. Y., for trustee; Dorothy Eisenberg, Mineola, N. Y., of counsel.

Weinstock & Marks, Beverly Hills, Cal., for defendant; Michael W. Weinstock, Beverly Hills, Cal., of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

The trustee herein has commenced an adversary proceeding for an order directing the defendant to turn-over certain property of the bankrupt, or in the alternative, if said property has been sold or transferred, the sum of $6,000. The defendant contends that this Court lacks summary jurisdiction to issue the turn-over order. For the reasons set forth below, this Court finds that it lacks summary jurisdiction over the defendant in this proceeding.

## II.

On January 30, 1978 an involuntary petition of bankruptcy was filed against Guillotine Splicer Corp. Subsequently, on February 21, 1978, the bankrupt was adjudicated. The bankrupt was a manufacturer of film splicers, tapes, and associated film editing equipment.

The trustee commenced an adversary proceeding seeking an order directing the defendant to turn-over certain personal property of the bankrupt, to wit;

(a) Film splicers, all with the label "Guillotine Splicer Corp."

6—16MM 2T splicers
1—16MM FR
3—16MM ST
1—35MM Cinemascope
8—35/16
3—Super 8—1–3 Format
3—Super 1–4 Format
24—A–1 Amateur Plastics
12—Amateur Metals
1—70MM
2—Super 8MM Workshops—with splicers

(b) 40 gross China marking pencils with the name "Guillotine".

(c) 12 bottles of film cleaner with labels bearing the name "Guillotine".

(d) Tapes, all on "Guillotine" cores.

24 boxes Super 8MM tape (48 rolls)
504 rolls 16MM clear tape
72 rolls 16MM opaque tape
24 rolls 16MM track blooping tape
24 rolls 16MM picture blooping tape
24 rolls 35MM track blooping tape
24 rolls 35MM picture blooping tape

If the defendant has sold or transferred the aforementioned property, then in the alternative, the trustee, seeks a money judgment in the sum of $6,000 (the approximate value of the property).

In his answer, the defendant denies that he has possession of the property; therefore he contends that this Court lacks summary jurisdiction in this proceeding.

Thereafter, the trustee commenced discovery proceedings pursuant to Bankruptcy Rules 733, 734, and 736, to determine whether or not the defendant possessed property of the bankrupt. In his response thereto, the defendant stated that all property of the bankrupt had been sold.

The trustee has not submitted any evidence that indicates that the defendant presently has possession of the bankrupt's property or proceeds thereof which have been segregated.

## III.

Bankruptcy Act Section 2a(7) invests the Courts of Bankruptcy "with such jurisdiction at law and in equity as will enable them" to "[c]ause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto . . .".

The Bankruptcy Act also invests the Bankruptcy Court with the jurisdiction to "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for as may be necessary for the enforcement provisions of this Act". Bankruptcy Act Section 2a(15). From this grant of jurisdiction, the Bankruptcy Courts have fashioned the summary turn-over procedure.

The United States Supreme Court in *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), defined the parameters of the Bankruptcy Court's jurisdiction to issue a turn-over order. In *Maggio* the Court stated that:

In applying these grants of power, courts of bankruptcy have fashioned the summary turnover procedure as one necessary to accomplish their function of administration. It enables the court summarily to retrieve concealed and diverted assets or secreted books of account the withholding of which, pending the outcome of plenary suits, would intolerably obstruct and delay administration. When supported by "clear and convincing evidence," the turnover order has been sustained as an appropriate and necessary step in enforcing the Bankruptcy Act. *Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173,

73 L.Ed. 419; *Cooper v. Dasher*, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203. See also *Farmers' & Mechanics' National Bank v. Wilkinson*, 266 U.S. 503, 45 S.Ct. 144, 69 L.Ed. 408.

*But this procedure is one primarily to get at property rather than to get at a debtor.* Without pushing the analogy too far, it may be said that the theoretical basis for this remedy is found in the common law actions to recover possession—detinue for unlawful detention of chattels and replevin for their unlawful undertaking—as distinguished from actions in trespass or trover to recover damages for the withholding or for the value of the property. Of course the modern remedy does not exactly follow any of these ancient and often overlapping procedures, *but the object—possession of specific property—is the same. The order for possession may extend to proceeds of property that has been disposed of, if they are sufficiently ·identified as such. But it is essentially a proceeding for restitution rather than indemnification,* with some characteristics of a proceeding in rem; *the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so.* It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.

*The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding.*

. . .

It is evident that the real issue as to turnover orders concerns the burden of proof that will be put on the trustee and how he can meet it. *This Court has said that the turnover order must be supported by "clear and convincing evidence," Oriel v. Russell*, 278 U.S. 358, 49 S.Ct. 173, 174, 73 L.Ed. 419, and *that includes proof that the property has been abstracted from the bankrupt estate and*

*is in the possession of the party proceeded against.* It is the burden of the trustee to produce this evidence, however difficult his task may be. *Id.*, at 62–64, 68 S.Ct. at 405. (emphasis supplied)

To obtain a turn-over order, the trustee has the burden of establishing by clear and convincing evidence that: (a) the property has been abstracted from the bankruptcy estate, and (b) the property is in the possession of the party proceeded against at the time of the turn-over proceeding. *In the Matter of Wire Corporation of America* 131 F.Supp. 586, 588 (D.N.J.1955); See also *In re Kirk Kabinets, Inc.*, 393 F.Supp. 798, 801 (N.D.Ga.1975).

■ Assuming arguendo that the trustee has met his burden of establishing by "clear and convincing evidence" that property has been extracted from the bankrupt's estate, it is clear that he has not met his burden of establishing by "clear and convincing evidence" that at the time of the turn-over proceedings the defendant was in possession of property of the bankrupt or identifiable proceeds thereof. In fact, the trustee has failed to submit any evidence that the defendant presently possesses property of the bankrupt or identifiable proceeds thereof.

■ The trustee is actually seeking a money judgment against the defendant. However, unless the defendant consents to the jurisdiction of this Court, this Court lacks the jurisdiction to render a money judgment in this proceeding.

In *In Re Patterson-MacDonald Ship Building Co.*, 284 F. 281, at 283 (W.D.Wash. 1922), aff'd 292 Fed. 700 (9th Cir. 1923) the Court stated:

"The Bankruptcy Court is created, and its jurisdiction is fixed and limited, by the Bankruptcy Act (Comp.St. §§ 9585–9656). The spirit and purpose of the Act do not contemplate a general judgment in favor of the bankrupt estate against a third person. Section 23b of the Act, supra (Comp.St. § 9607), provides that the Trustee may bring a suit 'in the courts where the bankrupt, whose estate is being administered by such trustee, might have

brought or prosecuted them.' But this does not comprehend any plenary action in the Bankruptcy Court. An analysis of the cases relied upon by the Trustee do not sustain it. (citations omitted) In the absence of consent, the jurisdiction of the bankrupt court is limited to ascertaining the net amount due the creditors. Section 68 of the Act, supra (Comp.St. § 9651).

"*I think the authorities are conclusive that a bankruptcy court has no jurisdiction to entertain a claim by a trustee against a third party for a money judgment.*" (emphasis supplied)

See also, *Metz v. Knobel*, 21 F.2d 317, 318 (2d Cir. 1927).

Clearly, this Court lacks jurisdiction to render a money judgment against the defendant in this case.[1]

---

1. The Bankruptcy Reform Act of 1978 greatly expanded the Bankruptcy Court's jurisdiction and thereby eliminated the summary/plenary jurisdiction distinction. 28 U.S.C. § 1471 (1978). While the Bankruptcy Reform Act became effective on October 1, 1979, by virtue of § 403(a) it does not apply to this proceeding. See *Guardian Mortgage Investors v. Unofficial Noteholders-Debentureholders Creditors Committee*, 607 F.2d 1020, 1023–1024 n.6 (2d Cir. 1979).